## SWARTZ v. BALLOU.

1. **Deed:** AUTHORITY TO INSERT NAME OF GRANTEE. Where the owner of land executed a deed in blank and placed it in the hands of another party under circumstances which raised an implied authority in the latter to insert the name of the grantee, *held*, that the insertion of the grantee's name, either by the party receiving the deed, or by some one authorized by him, made the instrument perfect as a conveyance.

2. ———: ———. The failure by the party receiving the deed to execute strictly the implied authority with which he was invested would not, as between the grantor and an innocent purchaser, render the conveyance void.

3. ———: ———: MAY BE GIVEN BY PAROL. Authority may be given an agent by parol to insert in a deed the name of the grantee.

4. ———: BREACH OF WARRANTY: ATTORNEY'S FEES. In an action for breach of covenant of warranty the grantee may recover taxable costs, but before he can recover his attorney's fees he must show that he has paid, or is under obligation to pay, some specific sum. He cannot recover what he may show are *reasonable* fees without proof that he has incurred liability to that extent.

*Appeal from Madison Circuit Court.*

SATURDAY, OCTOBER 20.

ACTION to recover possession of real estate. Both parties claim title. The defendant, under a warranty deed from the plaintiff, and by reason of the bringing of this action, claims the right to recover his reasonable attorney's fees incurred in his defense herein. The court found for the defendant as to the ownership of the property, but refused to render a judgment for any amount for attorney's fees. The trial below was on written testimony as in equitable actions, and both parties seem to concede the trial shall be *de novo* here. Both parties appeal.

*S. G. Ruby*, for appellant.

*Eli Wilkin* and *C. C. Cole*, for appellee.

SEEVERS, J.—Previous to June 22, 1865, the plaintiff was the owner of the premises in controversy. On that day he made and executed a conveyance of said premises, containing the usual covenants, which was properly acknowledged and perfected in every respect, except that no grantee was named therein. This instrument, on or about its date, was sent by plaintiff to one J. B. Louther. Both the plaintiff and Louther resided in Pennsylvania, and the premises in controversy are situate in Madison county, in this State. The exact date does not appear, but previous to December 12, 1865, the name of E. W. Davis was inserted in said conveyance as grantee, and the same on said day was duly recorded in said Madison county. On November 21, 1867, Davis, for a valuable consideration, sold and conveyed to one Hutchins, who, on December 4, 1867, for a like consideration, sold and conveyed the same to the defendant. Both of these conveyances were warranty deeds in the usual form and were filed for record in Madison county on the 4th day of December, 1867. The defendant went into possession of said premises soon after his purchase, and during the year 1868 and since 1869 has made valuable improvements thereon. He had "no notice whatever of the plaintiff's claim of ownership to the premises in question until about the time of the commencement of this action," which was in May, 1875. Hutchins, at the time he purchased of Davis in 1867, had "no notice of plaintiff's claim of title or ownership before purchasing the premises." For several years preceding 1865 the plaintiff paid the taxes, but did not do so for that or any subsequent year. Nor is it shown that Louther paid any of said taxes.

The foregoing are the undisputed facts, and plaintiff testified: "Wm. Louther, father of J. R. Louther, came to Altoona and wanted the land, and offered me all kinds of oil stock for the land, or had at the time different kinds of stock, for which he was asking different prices; I refused to sell the land or take

any of his stock at any price; I was in Newport some time after this; saw W. Louther; also met J. R. Louther at his own house in Newport; he spoke to me about this land, and expressed a wish to have the land; I told him all I wanted was the money, and asked him $3,000 for 400 acres in Iowa; he said he had no money now, but would give me oil stock, and give me my choice; I declined taking any stock, that it was all alike, none of it having any value; he then said I should send him the deeds in blank and try and sell some stock for him, which he thought would be valuable in time; I orally said I would send him the deeds in blank, but declined taking any stock; no exchange made, but Louther said if the stock would be of no value I should not lose anything; that he would make it good; if at any time the stock would be saleable I would send for it; never got the stock, never sold any, and never was saleable. This, Louther, as well as myself, knows very well. I either wrote or told him, can't say which, that stock was not saleable; he never sent me the stock; the fact is, he was not to send any unless I had an opportunity of making sale, and I made the deed as described, in blank, so as to protect myself, and never did, or intended, making or conveying to him, or any one else, unless I was paid; never gave him any instructions after sending the deeds; never gave J. R. Louther any directions or instructions in relation to the land; I did sign a deed or deeds, as before stated, in blank, no grantee or purchaser named in the deed, and sent the same as stated to J. R. Louther, Newport, at his own request, and in accordance with an oral understanding with said J. R. Louther; he owning a large quantity of western land at the time and wanted this land of mine, agreeing to give me my choice of oil stock, which he said would sell or be valuable; I refused to take any of the stock or to sell the land; he then proposed that I should send him deeds in blank, and try and sell some of his stock, as he had no money now, but if I failed in selling stock I could not lose anything; he would give me 1,500 shares State Capital oil stock, which would make at par $3,000, and if I could not make the money ($3,000) he would make it good; he was worth then $60,000, and most of it in real estate; I refused to

take any stock, but agreed to send him the deed or deeds in blank, and that if the stock would ever be worth anything I would try and sell it, or sufficient to pay me the $3,000.  The stock never was worth anything, never sold it, never realized anything, and never conveyed or authorized the sale of any land; signed a deed as stated; sent same to J. R. Louther, Newport; deed was not complete, no grantee named; don't remember if dated or not; no stamp attached; the land was not conveyed to any one.

"*Int. 19.* State how long it was from the time you parted with possession of said deeds until you requested its return to you.

"*Ans.* I do not now remember how long it may have been, but wrote to him several times about deeds but never received any very definite answer.  But in a personal interview he stated that he did not remember of making any disposition of deeds, and said that after he failed the whole matter was a kind of a blank, but he did say very positively that he had never sold the land.  I did not know what to think, and wrote to Iowa; think this was sometime in 1869 that I first learned that my deeds were recorded in Iowa, and the land sold by E. W. Davis."

The plaintiff also states that he never sold the land to Louther or authorized him to insert the name of a grantee in the deed.  In relation to such authority, Louther testifies: " Can't say there was any special authority given me for such purpose; had no general instructions on such matters from plaintiff in writing or otherwise."

David Kennedy testifies that he obtained the conveyance made by the plaintiff from Louther, by whom he was authorized to insert the name of a grantee, and that he inserted the name of E. W. Davis as such grantee, to whom he sold the premises.  Louther does not contradict this statement.  He says, however, that he knew Kennedy from about 1862 to 1865; that he, Louther, did not write the name of E. W. Davis as grantee in said deed, and that he did not *deliver such deed to Kennedy to be delivered to Davis.*  He also states: " Don't know that I ever received any consideration for the real estate.

No *money* came from E. W. Davis or David Kennedy that I know of; don't know that I ever disposed of the real estate."

It is not sufficiently shown that Davis had any knowledge that the deed delivered to him by Kennedy was defective in any respect at the time it came into the possession of Kennedy, or at the time it was delivered to him.

The foregoing is a full statement of the material evidence, and therefrom we conclude:

I.   That Louther had at least implied authority to insert the name of a grantee in the conveyance executed by the plaintiff.  Indeed, it can be well said his authority was express in case the plaintiff got his pay for the land, either through the sale of oil stocks or otherwise.   The evidence also tends strongly to support a sale to Louther.   Unless some one of the foregoing propositions is true, it is difficult to conceive the object and purpose of the parties.   The one desired a blank deed sent him, and the other, in accordance with such request, sending a deed full and complete in all its parts, except the name of a grantee.   The plaintiff signally fails to explain the transaction and the conceded facts in such manner as to make the same consistent with his theory.   It is too clear for serious controvery that it was not the intent of the plaintiff the deed should ever be returned to him for the purpose of having the name of a grantee written thereon, either by him, or with his knowledge or consent.   If he did not regard the land as sold why did he not, as he had previously done, pay the taxes.   The only excuse given is that he took it for granted Louther would pay the taxes, as he had other western lands.   But why should Louther pay taxes on plaintiff's land?

*1. DEED: authority to insert name of grantee.*

Another significant fact is that plaintiff must have sent Louther at least some of his title papers.   Davis states he received such, but the convincing circumstance is the deed conveying the title to the premises to plaintiff was recorded on the same day as the deed to Davis.   There is no pretense plaintiff had anything to do with the recording of either of these deeds.   No one but Davis had any interest in having these deeds recorded at the time the same was done.

At the time the deed was sent to him Louther, in plaintiff's opinion, was wealthy, and if plaintiff could not get his pay for the land by a sale of oil stocks Louther would not let him suffer, therefore plaintiff made no serious effort to get the deed back, or ascertain what had become of it, or obtain pay for the land, until 1867, at which time Louther had become insolvent.

When the name of Davis was written in the deed as grantee the same became perfect as a conveyance. We deem it immaterial whether Louther wrote the name or authorized it to be done by another. The question is not whether Louther carried out his instructions, or did or authorized what was done in strict accord with the implied power with which he was vested, but in any event or contingency had he authority to insert the name of a grantee in the deed? For instance, there is no doubt if Louther had remitted the plaintiff $3,000 in cash in payment for the land, his authority would have been full and complete to insert the name of any person he saw fit as grantee, and such person would have been vested with a full and perfect title to the premises. That the plaintiff so intended we are forced to believe. The fact that Louther did not strictly carry out the implied authority with which he was invested will not, as between the plaintiff and an innocent purchaser for value, render the conveyance void unless the law is as claimed by plaintiff, that such power and authority cannot be implied or conferred by parol.

II. It must be remembered that the deed, in its imperfect condition, was fully delivered to Louther. Whether authority 3. ——: ——: may be conferred in express terms by parol to

may be given
by parol. insert the name of a grantee in a deed perfect in all other respects, or that it may be implied from the acts and conduct of a grantor as between him and a purchaser in good faith, are questions which have been largely discussed, and the authorities are not in accord on the subject.

These questions first came before this court in *Simms v. Hervey*, 19 Iowa, 273, and are there elaborately considered, and the authorities referred to by DILLON, J. It is unnecessary to restate the arguments or make another citation of the authorities, except to say it is apparent the rule that such

authority cannot be conferred rests largely, if not entirely, on the common law doctrine in relation to instruments under seal, such doctrine being that such authority could only be conferred by instrument under seal.

Seals having been abolished by statute in this State, and, therefore, not necessary to the validity of a conveyance of real estate, it would seem, as the reason for the rule has ceased, that the rule itself should not be further recognized. The exact question in the present case was not determined in *Simms v. Hervey*. It is true, the writer of the opinion seems to have concluded the better rule would be to deny that such authority could be conferred by parol. It is certain, however, the court did not concur in this view. This is apparent from the opinion, and the subsequent case of *Owen v. Perry*, 25 Iowa, 412, the opinion in which was written by WRIGHT, J., and who concurred in the conclusion reached in *Simms v. Hervey*. See, also, *Devin v. Himer*, 29 Iowa, 297; *Clark v. Allen*, 34 Iowa, 190. It may be said the facts in none of these cases present the questions in the case at bar, yet it will be found difficult to draw a distinction in legal effect between the present case and *Owen v. Perry*.

Without entering into a discussion of the reasons, and referring to authorities at greater length, we conclude, as the result of our investigation, that the decided weight of modern authority, and reason, is in favor of the rule announced by the Supreme Court of the United States in *Drury v. Foster*, 2 Wall., 24. It is there said, "If a person competent to convey real estate sign and acknowledge a deed in blank, and deliver the same to an agent with an express or implied authority to fill up the blank and perfect the conveyance, its validity could not be well controverted.

"Although it was at one time doubtful, whether a parol authority was adequate to authorize an alteration or addition to a sealed instrument, the better opinion at this day is the the power is sufficient." See, also, the late cases of *Van Etta v. Evenson*, 28 Wis., 33; *Field v. Stagg*, 52 Mo., 534; *Schintz v. McManamy*, 33 Wis., 299. The contrary rule was adopted in Calafornia, in the recent case of *Upton v. Archer*, 41 Cal.,

Swartz v. Ballou.

85. No authorities are cited except Story and Dunlap's Paley on Agency, and it is said the case comes within the "sixth section of the Statute of Frauds." Whether the Statute of Frauds of California is different from that of this and other States, we are not advised.

III. There is no evidence tending to show that defendant had ever paid or agreed to pay any amount as counsel fees in the defense of this action. All that appears is that three hundred dollars would be a reasonable fee should we admit that the bringing of the action constitutes a breach of the covenants' in the deed, and entitles the defendant to recover such damages as he has sustained by the breach, still we are of the opinion he cannot recover such fees.

4.——: breach of warranty: attorney's fees.

That the taxable costs may be recovered seems to be generally conceded. But unless counsel fees constitute a part of such costs, the authorities are by no means uniform on the subject. Rawle on Covenants for Title, 101, 102.

The thought is that defendant's title has been impugned, and that he has been put to cost, trouble and expense in defending such title. He recovered his taxable costs, and he insists that he is also entitled to recover the fees of his counsel. It seems to us that before he can do so he must show that he has paid, or is under obligation to pay, some specific amount. That a certain sum would be reasonable is not sufficient. This may be well said to be analagous to the case of an incumbrance. The measure of damages in such case is not the amount of the incumbrance, but the amount actually paid. So here the defendant must have paid or be under obligation to pay some specific sum, and that must be a reasonable amount. The burden was on him to prove such amount. He cannot bargain with an attorney to perform the services required, for instance, for $100, and because a reasonable fee would be $300, recover the latter sum. Affirmed on both appeals.

AFFIRMED.