JULIA A. GARLAND, APPELLANT, V. HENRY E. WELLS ET AL., APPELLEES.

1. **Fraud:** PRINCIPAL AND AGENT. Evidence reviewed, and *Held*, That the principal had, as against an innocent purchaser, ratified the fraudulent act of her agent.

2. ———: ———. If the owner of land deliver to his agent a deed thereof, executed in blank as to the grantee, with express or implied authority to insert the name of a purchaser and perfect the conveyance, and the agent does so in good faith, the title will be conveyed.

3. ———: INNOCENT PURCHASER. And if, with such authority, the agent make a fraudulent use of the deed, as by inserting the name of a grantee and delivering it to him without consideration, for his own benefit, such grantee can convey a good title to an innocent purchaser.

4. ———. A purchaser with notice from a prior purchaser who was entitled to protection as a *bona fide* purchaser without notice, is himself entitled to protection against the previous equitable claim, which was invalid as against his grantor.

APPEAL from Lancaster county. Tried below before POUND, J.

*S. J. Tuttle,* for appellant.

*W. H. Snelling,* for appellees.

LAKE, CH. J.

This case comes here by appeal from the district court for Lancaster county dismissing the plaintiff's petition. The case was there heard on its merits.

The action was brought by Abigail D. Smith, now deceased (afterwards revived in name of Julia A. Garland), to have a chain of nominal conveyances of a tract of land from her to the defendant McMurtry set aside, and the legal title thereto confirmed in herself.

This relief was sought on the ground, as set out in the petition, that in the year 1872, said Smith then living in Quincy, Illinois, having intrusted the sale of the land to one Sherwood, as her agent, then a resident of Lincoln, sent to him a deed thereof in fee duly executed to a Mrs. Pooler, of St. Joseph, Mo., to whom Sherwood had by contract sold it. That instead of using the deed as intended, Sherwood fraudulently erased the name of Mrs. Pooler, the grantee, from said deed, and inserted in its place that of Margarett Andrews, his mother, and thus changed, had it entered of record in said county as her genuine deed.

That thereupon Sherwood caused Mrs. Andrews, who took the deed without consideration, to execute two mortgages on the land as security for his own prior obligations, which were afterwards foreclosed, and the title under the decree formally passed ultimately to McMurtry.

The theory of the petition is, that the deed from Mrs. Smith, because of said alteration, was absolutely void, and that the grantees under it took nothing thereby. And this doubtless would be true if the petition were sustained by the evidence. It is also alleged in the petition that McMurtry and those under whom he claims took the land with full knowledge of Mrs. Smith's right to it.

But McMurtry in his answer denies that Sherwood altered said deed, and alleges the fact to be that Mrs. Smith executed the deed in blank as to a grantee, and sent it in that condition to him with authority to insert the name of the purchaser, whoever he might be, and that he accordingly filled in the name of Mrs. Andrews, to whom he finally made the sale.

The finding of the court below on the issues being general, we do not know the precise ground of the judgment. Under the evidence, however, it might well, we think, have been that the defendants in the chain of conveyances, or some of them at least, were entitled to protection as innocent purchasers, no alteration of Mrs. Smith's deed having

been shown.   Or it might have been that Mrs. Smith, knowing full well the use to which Sherwood had put her deed, had, by her long silence and failure to repudiate it, acquiesced therein, and was consequently estopped from complaining.

Looking to the evidence, we find that there is none to the effect that Sherwood changed the name of the grantee. Mrs. Smith herself says her "best impression is that there was no grantee named in the deed."   This is really all the light given us on this particular branch of the case, except the circumstance of a total want of evidence to show an erasure of the grantee's name.

It is true that shortly after the deed was sent to Sherwood, Mrs. Smith was informed by letters from him that he had contracted to sell the land to Mrs. Pooler, and from this she was doubtless led to believe that the deed would go to her.   But there is not a particle of evidence to show that, at the time the deed was executed, Mrs. Smith had ever heard of Mrs. Pooler, so it is impossible that she could have intended her as the grantee.   Indeed it is reasonably certain, from all the facts and circumstances disclosed, that Mrs. Smith not only had no particular person in view, but, having full confidence in Sherwood's judgment and integrity, she left it entirely to him to select a purchaser, insert his name in the deed, and deliver it upon the terms, as to price and payment, she had given him.

That Mrs. Smith must have known of the use made of her deed very soon after its delivery to Mrs. Andrews, and some six years before she brought this action, is evident from at least one of the letters written by Sherwood to her, attached to her deposition.   This letter was sent to her from Colorado in September, 1874, where Sherwood then lived.   In it he says: "Dear Madam—Your favor of 1st inst. was duly received.   Now if you knew the circumstances in which I was placed one year ago by the rascality of other parties, you would not think so bad of me.   I will

say now, that I don't (or did not intend) to wrong you of one cent, and when the deed was transferred Mrs. Andrews expected the money from her brother without fail, but it did not come. Mrs. Andrews is as old as you are, and a member of the Methodist church. And for myself, if you or any one else can find a black spot in my character before the 1st day of July, 1873 (the deed was delivered to Mrs. Andrews on the 5th of that month), I am willing to go to the bottomless pit. Now, you shall have all of your money for your land in a very short time if I am let alone, as I am in the mining business and my lessees have just struck it rich. * * * * Now, please write to me how long you will wait for the whole amount, and if you will receive it in small amounts provided I cannot raise the whole amount at the same time. Now, if you publish our proceedings, or if it is known in this town, I cannot do anything for the support of my dear family or the liquidation of your debts. I am not the rascal you take me for, although you have reason to think so."

We have not the letter of Mrs. Smith to which this was an answer, nor her reply, if she made one. Mrs. Smith says much of the correspondence between them on this subject was destroyed. It is evident, however, from this letter that Mrs. Smith had censured him severely for the disposition he had made of her land, and was pressing him for payment of the price. It is pretty certain, too, that Mrs. Smith then, and for years afterward, as evidenced by her delay, looked only to Sherwood for the consideration of her deed. Otherwise, why did she permit the sale under the decree of foreclosure, and the subsequent conveyances, which it is now sought to have set aside, to be made without an effort to prevent them? Under this state of the proof, there can be no doubt that Mrs. Smith should be held to have ratified the delivery of the deed to Mrs. Andrews, even though she intended it for Mrs. Pooler, and that the plaintiff should now be estopped from questioning

its validity as to the defendants, who, it is clearly shown, invested their money on the faith of it.

And even aside from this delay and ratification, we think the plaintiff should fail. Mrs. Smith intrusted this deed to her agent with an implied authority, if not express, to insert the name of a grantee in blanks left for that purpose, and deliver it. The agent did so, and although he may have betrayed the confidence reposed in him, and doubtless did so by using the deed for his own benefit, thus rendering it clearly voidable as to Mrs. Andrews, it was good as to purchasers under her without knowledge of the fraud. And the deed was voidable as to Mrs. Andrews, not because of any want of authority in Sherwood to fill in the name of a real purchaser and deliver it thus perfected, but because of the fraud in delivering it without consideration, and for an evil purpose.

Although there is some conflict in the decisions, the current of the more modern of them plainly is to the effect, that if the owner of land deliver to his agent a deed thereof executed in blank as to the grantee, with authority, either express or implied, to insert the name of a purchaser and perfect the conveyance, and he does so in good faith, the title will be conveyed. *Drury v. Foster*, 2 Wall., 24. *Van Etta v. Evenson*, 28 Wis., 33 (9 Am. Repts., 486). *Schintz v. McMnamy*, 33 Wis., 299. *Field v. Stagg*, 52 Mo., 534 (14 Am. Repts., 435). *Swartz v. Ballou*, 47 Ia., 188 (29 Am. Repts., 470). And it follows from this that if the agent with such authority, make a fraudulent use of the deed intrusted to him, as by inserting the name of a grantee and delivering it to him without consideration, and for his own benefit, such grantee can convey a good title to an innocent purchaser.

It is probably true that McMurtry was informed that Mrs. Smith still made some claim to the land when he bought it, or rather, before he had paid the whole of the consideration. But even this cannot prejudice him for the

reason that he derived his title through persons who were doubtless innocent purchasers. Neither Wood nor Geisinger had any notice whatever of Mrs. Smith's claim. McMurtry, therefore, is within the rule that "a purchaser with notice from a prior purchaser, who was entitled to protection as a *bona fide* purchaser without notice, is himself entitled to protection against the previous equitable claim, which was invalid as against his grantor." 3 Wait's Actions and Defenses, 474. For these reasons the judgment must be sustained.

JUDGMENT AFFIRMED.

THE other judges concur.