JAMES P. MAHONEY ET AL., APPELLANTS, V. FRANK SALS-
BURY ET AL., APPELLEES.

FILED FEBRUARY 20, 1909. No. 15,554.

1. **Quieting Title:** DEEDS: ATTACHMENT: PRIORITIES. D. in good faith purchased a tract of land of W., paying him in full the agreed price therefor. W. thereupon executed and delivered to D. his warranty deed for said land, leaving the name of the grantee

Mahoney v. Salsbury.

therein blank, with the understanding that, if one M. should desire to take the land and immediately repay D. the purchase price, his name was to be inserted in the deed as grantee; but, if M. should fail to take the land, then D. was to insert his own name therein. M. failed to pay for the land at the time agreed upon, and the name of D. was inserted therein as grantee. *Held*, That the deed when thus completed conveyed the land to D., and his title thus obtained was paramount to the liens of attachments subsequently levied thereon.

2. **Deeds**: RECORDING: PRIORITIES. A prior unrecorded deed, passing the legal title to the real estate in good faith and for a valuable consideration, will take precedence of an attachment or judgment, ·if such deed be recorded before any deed based upon such attachment or judgment. *Harral v. Gray*, 10 Neb. 186.

3. **Attachment**: MOTION TO DISSOLVE: TITLE TO REALTY. The question of the ownership of real estate cannot be adjudicated on a motion to dissolve an attachment. The issue of fact in such a proceeding is not whether the attachment debtor owns the property, nor whether his grantee has an unimpeachable title or interest therein.

APPEAL from the district court for Butler county: ARTHUR J. EVANS, JUDGE. *Reversed with directions.*

*L. C. Burr* and *T. J. Doyle,* for appellants.

*Aldrich & Fuller, contra.*

BARNES, J.

Plaintiffs brought this action in the district court to quiet title to a tract of land situated in Butler county. Defendants Salsbury, Lemon and Brown answered, setting up certain proceedings and judgments in attachment, in which they were plaintiffs and the defendant Joseph Wells was the defendant, by which they alleged that they had obtained liens upon the land in question which were prior and superior to the rights of the plaintiffs. Defendant Wells answered, claiming to be the owner of the premises, and alleged that he had been induced by duress, coercion and fraud practiced upon him by the plaintiffs and others to convey the land in question to the plaintiff Doyle, and prayed that his conveyance

be set aside and held for naught, and that the title to
said land, as against the plaintiffs, be quieted in him.
The district court rendered a decree in favor of the plain-
tiffs and against defendant Wells dismissing his cross-
petition, and in favor of the defendants Salsbury, Lemon
and Brown sustaining their attachment proceedings, and
dismissing the plaintiffs' action as to them.  From that
part of the decree the plaintiffs have appealed.  Wells
prosecutes no cross-appeal, and therefore the *bona fides*
of the sale and conveyance by him to the plaintiff Doyle
is as between them not now an open question.

The testimony contained in the bill of exceptions we
think fairly establishes the following facts:  That on and
prior to April 15, 1905, the defendant Joseph Wells was
the owner of the northeast quarter of section 19, in town-
ship 13, range 2 east of the sixth P. M., in Butler county,
Nebraska, together with certain other land; that he re-
sided at that time in Denver, Colorado, and  prior to
that date had corresponded to some extent with plaintiffs
about a sale of his land to the plaintiff Mahoney; that
Doyle, acting in the capacity of agent for Mahoney, ac-
companied by one L. C. Burr, went to Denver to see
Wells about the matter, and on the date last above me-
tioned purchased the land from Wells, paying him there-
for $4,550 in cash, and assuming mortgages, interest and
taxes, which were liens on the land, amounting to $6,250;
that Wells thereupon executed and delivered to Doyle a
warranty deed to said premises, complete in all respects,
except the name of the grantee, which was left in blank.
It appears that it was understood by Wells that the name
of the grantee was to be left in blank solely for the reason
that Doyle was not certain that Mahoney would complete
the purchase according to their previous agreement, and,
having paid his own money for the land, it was deemed
best, in case of delay on the part of Mahoney or of his
failure to complete his proposed purchase, for Doyle to
take title to the land himself.  Doyle returned from Den-
ver to Lincoln on the 16th day of April, 1905, bringing

the deed in question with him.   On Monday, April 17, he
went to Greeley, Nebraska, to attend court, and instructed
Mr. Burr, who was familiar with the transaction, to close
the deal with Mahoney, if he was prepared to take the
property and pay for it on that day, and insert his name
in the deed, but, if for any reason Mahoney failed to com-
plete his purchase at that time, to insert Doyle's name in
the deed as grantee, and send it to Butler county for
record.   It further appears that Mahoney came to Lin-
coln on the 17th day of April, but was unable to complete
his purchase at that time; that Burr on that date in-
serted Doyle's name in the deed as grantee, and the same
was thereafter forwarded to the county clerk of Butler
county for record, and was recorded on the 22d day of
April following.

On the 20th day of April defendants, Salsbury, Lemon
and Brown commenced attachment suits in the district
court for Butler county against the defendant Joseph
Wells, and on the day following said attachments were
levied upon the 160 acres of land in question herein as the
property of defendant Wells.   The attachment suits were
commenced on claims not then due, and the grounds there-
for, as set forth in the affidavits, were that Wells was a
nonresident of this state, and that he had sold, incum-
bered and disposed of his property with intent to defraud
his creditors.   Wells appeared by the plaintiff Doyle as
his attorney, and moved to dissolve the attachments.   In
support of his motions, he set forth by affidavit the *bona
fides* of the transaction by which he conveyed the land in
question to the plaintiff Doyle on the preceding 15th day
of April.   The motions to dissolve were overruled, and no
other or further appearance was made in the attachment
suits.   Judgments were rendered therein against the de-
fendant Wells, and the attached property was ordered to
be sold.   On the 1st day of May, 1905, Mahoney procured
the money necessary to purchase the land in question,
and paid the same to Doyle, who thereupon conveyed it
to him by a warranty deed.   Thereafter the plaintiffs com-

menced this action to restrain the defendants Salsbury, Lemon and Brown from proceeding further in said attachment suits, from selling the land under the orders of attachment above mentioned, and to quiet their title to the same as against the defendants, said attachment creditors.

It further appears that at the time of the execution and delivery of the deed in question defendant Wells also executed and delivered to the plaintiff Doyle the following instrument in writing: "Roy Parks: For value received I have this day sold, assigned and set over to Thomas J. Doyle of Lincoln, Nebraska, all my right, title and interest, claim and demand in and to the lease under which you occupy the above named premises, and you not having paid me any rent due under said lease for the year 1905, or subsequent thereto, you will please pay the same and all thereof to him, and recognize him as your landlord, and any and all courtesies you may extend to him will be thoroughly appreciated by yours truly, Joseph Wells." On the 17th day of April, 1905, Doyle communicated to Parks, who was in possession of the land in controversy as a tenant, the fact of his purchase and the assignment of the lease to him, and from that time on was recognized by Parks as the owner of the premises.

It is contended that the deed executed by Wells to Doyle on the 15th day of April, 1905, with the name of the grantee in blank, was for that reason void and conveyed no title to Doyle; that, therefore, the land still belongs to Wells, and is subject to sale under the orders of attachment. This contention might be sustained if it were shown that Doyle had no authority to insert the name of the grantee in the deed, but we are satisfied from the evidence that Doyle had such authority. Not only is that fact testified to by him and by Burr, but all the circumstances surrounding the transaction point unerringly to the fact that it could not then be determined with certainty whether Mahoney would complete the purchase

according to his agreement, or whether it would be necessary for Doyle to take title to the land himself, and therefore the deed was executed in blank as to the name of the grantee. Doyle having authority to insert the name of the grantee in the deed, when that act was performed by Burr, and Doyle's name was inserted, the deed became complete in all respects and conveyed an absolute title to the land to Doyle. *Field v. Stagg,* 52 Mo. 534; *Van Etta v. Evenson,* 28 Wis. 33; *Devin v. Himer,* 29 Ia. 297; *Swartz v. Ballou,* 47 Ia. 188; *Campbell v. Smith,* 71 N. Y. 26; *Phelps v. Sullivan,* 140 Mass. 36.

In *Devin v. Himer, supra,* the grantor in a deed omitted the name of the grantee, not knowing the full name, and left a blank therefor. The deed in this condition was delivered by him to the grantee, who thereafter by his attorney filled the blank with his name, and it was held that it was a sufficient execution and delivery of the deed.

In *Reed v. Morton,* 24 Neb. 760, we held that, where a wife executed a deed of her real estate, leaving the name of the grantee, the amount of consideration and the date blank, and delivered it to her husband for the purpose of enabling him to sell and convey said real estate, such deed, duly filled up, in the hands of a *bona fide* grantee, who purchased the land from the husband, and paid the consideration therefor, should be sustained. We think the rule announced in the foregoing cases is upheld by the great weight of authority, and the defendants' contention on this point cannot be sustained.

It appears, however, that this deed was not recorded until the day following the levy of the attachments, and it is therefore contended that the liens of the attachments are paramount to the title conveyed to Doyle by said deed. In *Harral v. Gray,* 10 Neb. 186, we held: "A prior unrecorded deed, passing the legal title, made in good faith and for a valuable consideration, will take precedence of an attachment or judgment, if such deed be recorded before any deed based upon such attachment or judgment." This rule is supported by *Mansfield v. Gregory,* 11 Neb.

297, and *Hubbart v. Walker,* 19 Neb. 94. In *Uhl v. May,* 5 Neb. 157, a case where the legal title to the real estate was in the judgment debtor, and such real estate was in the possession of another party, it was held that the lien of the judgment attached only to the interest of the judgment debtor therein, and that possession of land is notice to all the world, not only of the possession itself, but of the right, title and interest, whatever it may be, of the possessors. We find that the rule announced in *Harral v. Gray, supra,* was approved in *Naudain v. Fullenwider,* 72 Neb. 221, and seems to be the settled law of this state. It follows that, if the deed from Wells to Doyle was made in good faith and for a valuable consideration, then it takes precedence, though unrecorded, over any lien which the defendants Salsbury, Lemon and Brown obtained by reason of their attachment proceedings.

It is contended, however, that the deed in question was not made in good faith, and that Doyle never purchased the land in controversy. We fail to understand how any such contention can be made in face of the evidence contained in the record. That Doyle paid the entire purchase price for the land to the then owner Wells on the 15th day of April, 1905, is not questioned or disputed. It is not claimed that this was not the fair market value of the land, and, at most, it can only be claimed that he was not acting for himself, and did not purchase the land, but was simply negotiating to purchase the same for the plaintiff Mahoney. The evidence does not sustain this claim. Doyle evidently purchased the land outright, and, when the transaction was completed, Wells no longer had any interest therein. If this be true, then the deed given to Doyle, as soon as his name was inserted therein as grantee, conveyed the title to him, and he was not only the owner of the land, but was in possession of it by and through his tenant, Roy Parks, for at least four days prior to the levy of the attachments in question herein. At the time of the commencement of those suits Wells had parted with all the interest he ever had in the land,

and had in fact conveyed it to the plaintiff Doyle.  It is insisted, however, that the judgment of the district court should be affirmed, because Mahoney had notice of the commencement of the attachment suits on the 20th day of April, 1905, and before he purchased the land from Doyle.  If, as we have held, Doyle was at that time the owner thereof, and had the legal title thereto, notice to Mahoney could in no manner affect his rights, and, when Mahoney purchased and took title from Doyle, he obtained the same title and interest that Doyle had thereto.

It is also contended that the sale of the land in controversy from Wells to Doyle was made fraudulently, with intent to cheat and defraud his creditors.  We find no' evidence in the record tending to establish this fact. Much evidence was introduced by the defendants by which they attempted to show that in the transaction complained of Doyle, together with others, conspired to cheat and defraud the defendant Wells out of his land.  No evidence was introduced showing or tending to show that Doyle was aware of the fact that Wells was owing any debts other than those which he assumed as a part of the purchase price of the land in question, and the other claims which Wells secured by a mortgage upon another eighty-acre tract of land.  So far as Wells is concerned, it is not shown that he had any intention or desire to defraud his creditors or any of them; that his purpose in making the sale to Doyle was to pay debts and obtain $5,000 to invest with other property he had in purchasing a half interest in a store in Denver.  It further appears that Wells since that time has paid a part at least of one of the debts which was the basis of the attachment suits. The fact that the business in which Wells engaged afterwards turned out to be unprofitable is not sufficient of itself to establish the claim that the sale to Doyle was made with intent to defraud creditors.

Finally, it is contended that the *bona fides* of the sale from Wells to Doyle was determined in the attachment suits, and is now *res judicata*.  In other words, that plain-

tiffs are bound by the judgments in those cases, and are now estopped to claim that their title is superior to the attachment liens.  It appears that neither of the plaintiffs were parties to those suits; therefore it would seem clear that they are not bound by the proceedings therein.  But it is contended that because the plaintiff Doyle appeared as attorney for the defendant in those actions for the purpose of securing a dissolution of the attachments, and filed affidavits relating to the sale of the land from Wells to himself, he became privy thereto, and is bound by the orders overruling the motions to dissolve.  We think the question of the *bona fides* of the transaction between plaintiff Doyle and defendant Wells relating to the sale and purchase of the land in question was not a point, nor could it have been made a point, in issue in the attachment suits.  In *Kimbro v. Clark,* 17 Neb. 403, it was said: "The question of the ownership of the real estate cannot be adjudicated by the intervention of the holder of the title, that question not being involved in any degree in the action.  In such case a judgment against the maker of the promissory note, and an order that the attached property be sold, will not debar the holder of the legal title from afterwards claiming title to the real estate."  In *South Park Improvement Co. v. Baker,* 51 Neb. 392, it was held: "The issue of fact in a proceeding to discharge an attachment is not whether the attachment defendant owns the property, nor whether his grantee has an unimpeachable title or interest therein."  In *Kountze v. Scott,* 49 Neb. 258, it was said: "A debtor who had transferred all his interest in property subsequently attached, to one who is not a party to the attachment suit, cannot, in his own name and right, be permitted, on motion for a dissolution of the attachment, to establish the validity of his transfer."  See, also, *Meyer, Bannerman & Co. v. Keefer,* 58 Neb. 220.  It seems clear from the foregoing authorities that the plaintiffs are not bound by the proceedings in the attachment suits, and

the defendants' contention on this point cannot be sustained.

From a careful examination of the whole record, we find that the plaintiffs have shown themselves entitled to the relief prayed for by their petition, and we find generally in their favor upon the issues joined. It follows that so much of the judgment of the district court as dismissed their petition and refused them any relief should be, and the same hereby is, reversed, and the cause is remanded, with directions to the district court to render a decree quieting their title to the real estate in controversy, as prayed for by their petition.

JUDGMENT ACCORDINGLY.