[No. 27156. Department Two. October 25, 1938.]

J. O. BALL *et al., Appellants,* v. PRESCOTT KAUFFMAN, *Respondent,* ROGER GRAY *et al., Defendants.*[1]

*V. A. Montgomery,* for appellants.
*Lee L. Newman,* for respondent.

SIMPSON, J.—This suit was instituted to set aside a purported transfer of an executory contract to convey

[1]Reported in 83 P. (2d) 746.

real estate. A trial was had by the court, and judgment entered dismissing plaintiff's case and deciding certain controversies between the defendants. Plaintiffs have appealed. Defendants Gray and Minnie Kauffman have not appeared in this court.

The facts presented by the record, in so far as they are necessary to a decision, may be summarized as follows: July 15, 1929, defendants Roger M. Gray and wife purchased real estate situated in King county from S. S. Sanger and wife, upon an executory contract. The contract provided that a certain balance due the grantors should be paid at the rate of fifty dollars per month. The property was purchased subject to a mortgage of three thousand dollars held by Katheryn Funcke.

Thereafter, the appellants purchased the contract from the Sangers and received payments from the Grays until, at the time this action was commenced, there was a balance due of $550.88. The transfer of the interests that the Sangers had in the balance of the purchase price was evidenced by the delivery of the original contract and the written assignment of that document. The assignment was termed "Seller's Assignment of Real Estate Contract and Deed." The assignment contract provided for the transfer of the sale agreement signed by the Sangers and the Grays, and also conveyed and warranted the premises to the assignees. It was a printed form, and the line providing for the insertion of the buyer's name was left blank.

During the year 1933, Mr. Gray conceived the idea of refinancing his obligations under the contract through the Home Owners' Loan Corporation, and talked the matter over with Mrs. Funcke and appellant J. O. Ball. For convenience, we will hereafter refer to the latter as the only appellant.

Mrs. Funcke was represented in the negotiations with appellant by Blaine Kennedy, who was engaged in the mortgage loan business. Appellant and Kennedy had several conversations relative to appellant's interest in the property. August 27, 1934, appellant and Kennedy reached an understanding that Mrs. Funcke would pay appellant one hundred dollars for the original contract and deed held by him. Appellant at that time made and signed the following statement:

"I will take one hundred in cash and give you the deed this is good for 30 days.
Aug. 27th 1934                                    J. O. Ball"

September 6, 1934, Kennedy paid appellant one hundred dollars, and received the "assignment of the real estate contract and deed," together with the original copy of the executory contract. Thereafter, Kennedy, at the instance of Mrs. Funcke, inserted the name of respondent Prescott Kauffman in the assignment of the real estate contract and deed on the line left blank for the name of the grantee. This document was filed for record September 7, 1934.

The property was afterwards leased to Pete Nelson, and certain improvements were made by Mrs. Funcke and respondent, and they also paid taxes due on the property for several years. Mrs. Funcke died and left all of her property to defendant Minnie Kauffman.

The pleadings disclose a controversy between respondent Prescott Kauffman and defendants Minnie Kauffman and the Grays, which is not necessary to discuss for the reason that it does not concern appellant.

Appellant contends that, according to the agreement between himself and Kennedy and Gray, he agreed to accept one hundred dollars in cash, and upon receipt of such payment would turn over his assignment in blank to enable Gray and wife and Mrs.

Funcke to obtain a loan from the Home Owners' Loan Corporation to refinance the property, and when this loan was completed he was to receive in addition a second mortgage on the property for the balance due upon the contract of purchase which he had received from the Sangers. In this contention, he was supported by Mr. Gray. Gray, however, was not present at any of the conferences between appellant and Kennedy. On the other hand, respondent contends that appellant sold all of his interest in the property and the contract.

At the conclusion of the appellant's case, a motion for nonsuit was made by counsel for respondent, which was granted. The court then proceeded to hear the evidence on the part of respondent and the defendants Gray and Minnie Kauffman relative to their contentions. After that phase of the trial had been continued for some time, the trial court changed its mind about the disposition of the motion for nonsuit and sent for counsel representing the appellant, who had left the court room at the time his client's case had been dismissed.

It is urged by the appellant that the court committed error in allowing the introduction of evidence during the time that his counsel was absent from the court room. We have examined the testimony introduced during that period of time and find that it related only to the issues raised between respondent and defendants Gray and Minnie Kauffman. It had nothing to do with the transfer of the contract by appellant. While the trial was somewhat irregular, the appellant was not injured or prejudiced by the introduction of that testimony.

As soon as appellant's counsel returned, the testimony of Mr. Kennedy was given relating to the transfer of appellant's interest in the balance due

upon the original contract, and its transfer to Mrs. Funcke, and from her to respondent. At the time of the introduction of that evidence, the court again said that he dismissed the action in so far as appellant was concerned, but gave to appellant an opportunity to introduce evidence rebutting that given by Mr. Kennedy. Thereafter, the trial proceeded, with counsel for appellant present and taking part in the proceedings. At the close of the case, the court again dismissed appellant's action upon the merits and said, in speaking of appellant's case:

"His evidence under the rules of law must preponderate over the evidence of the other side. The preponderance was on the side of the defendant in this case and not on the side of the plaintiff Ball."

Mr. Kennedy testified that there was no agreement made with appellant concerning the giving of a second mortgage, but that appellant agreed to and did take the one hundred dollars for his entire interest in the property. The written statement signed by appellant gives much support to that conclusion, and a careful examination of the record convinces us that the evidence supports the finding of the trial court. Appellant transferred his whole interest in the property and received the money he asked for his interest therein, and he is not in a position to complain.

Finally, appellant contends that respondent did not acquire title to the property by virtue of the delivery of the assignment of contract and deed for the reason that Kennedy had no authority to fill in respondent's name on the blank grantee space in that instrument. Appellant admitted that, when he received the documents, he had the right and authority of the vendors to fill in his, appellant's, name if Mr. Gray did not fulfill his contract.

Appellant contends that he transferred the assign-

ment to Mrs. Funcke through her agent Kennedy so that the title to the property could be perfected for the purpose of securing the Home Owners' Loan Corporation loan. That was sufficient authority for Mrs. Funcke, acting for herself or through her agent, to place in the instrument the name of anyone desired by her.

In *Wright v. Heyting*, 118 Wash. 436, 203 Pac. 935, in passing upon similar facts, this court said:

"It is first contended in Wright's behalf that the deed is void and ineffectual to convey the land to Heyting, because of its being signed, acknowledged and delivered by him to one Crouch with the space for the name of the grantee left blank; and Crouch, while authorized to elect who should be the grantee and insert such grantee's name in the deed, exceeded his authority in that behalf, in that he authorized Heyting to write his own name in the deed as grantee, and thereby unlawfully delegated his (Crouch's) authority to insert the name of the grantee in the deed. The record before us renders it plain that Crouch did not delegate to Heyting the right or power to choose or decide who the grantee should be, but only directed Heyting to do the physical act of writing his own name in the deed as grantee, in the consummation of a sale of the land by Crouch, representing both himself and Wright. Had Crouch, with his own hand, written Heyting's name in the deed as grantee, it seems plain that the deed so completed would have effectually conveyed the land to Heyting, apart from the question of fraud presently to be noticed. Our decision in *Clemmons v. McGeer*, 63 Wash. 446, 115 Pac. 1081, wherein the question is reviewed at some length, clearly calls for such a conclusion. Had Crouch sought to delegate to Heyting the authority to choose who the grantee in the deed should be, there would be ground for arguing that to be an unwarranted delegation of authority by Crouch to Heyting; but we think that, since Heyting did no more than the physical act of writing his name in the deed by the express direction of Crouch, the legal effect was the same as

if Crouch himself had, with his own hand, written Heyting's name in the deed as the grantee. Observations made in *Swartz v. Ballou*, 47 Iowa 188, 29 Am. Rep. 470, and *Guthrie v. Field*, 85 Kan. 58, 116 Pac. 217, 37 L. R. A. (N. S.) 326, are in harmony with this conclusion. We conclude that the deed did not become ineffectual to convey the land to Heyting because of want of lawful execution and delivery."

Other contentions are made by appellants, but in view of our conclusions concerning the transfer of the contract of purchase and its assignment, we find it unnecessary to consider them.

The judgment is affirmed.

STEINERT, C. J., BEALS, MILLARD, and GERAGHTY, JJ., concur.