W. H. GUTHRIE, *Appellee,* v. F. B. FIELD *et al.*
(J. W. RIFFIE, *Appellant*).

No. 17,103.

SYLLABUS BY THE COURT.

DEEDS—*Name of Grantee Left Blank—Delivery to Agent to Negotiate Sale—Wrongful Delivery by Agent to Third Person—Innocent Purchaser.* Where the owner of real estate executes and acknowledges a deed thereto, leaving the name of the grantee blank, and intrusts it to another with authority to negotiate a sale of the land, fill in the name of the buyer, and deliver the deed upon certain conditions, and the holder of the deed in violation of his instructions delivers it to a third person, who fills in his own name and records the deed, an innocent purchaser of the property upon the faith of the record acquires such a right that his claim of title can not be adjudged void at the suit of the original owner without compensation being made for what he has lost by the transaction.

Appeal from Finney district court. Opinion filed June 10, 1911. Reversed.

*James T. Burney & Son,* and *Hopkins & Hopkins,* for the appellant.

*O. H. Foster, Edgar Foster,* and *H. O. Trinkle,* for the appellee.

The opinion of the court was delivered by

MASON, J.: W. H. Guthrie recovered a judgment against F. B. Field, the Osage Live-stock Company, a Missouri corporation, and J. W. Riffie, quieting his title to a tract of land in Finney county. Riffie appeals. The facts, as found by the court or testified to by the plaintiff, are substantially as follow:

Guthrie, a resident of Finney county, on March 10, 1908, delivered to Field, who lived in Kansas City, a warranty deed to the property, fully executed and acknowledged, except that a blank was left for the name of the grantee. The arrangement between them was that Field was to have thirty days within which to

find a purchaser, and upon collecting $2000 for Guthrie was to fill in the name of the buyer and deliver the deed. At the expiration of the thirty days Guthrie went to Kansas City and asked Field for the return of the deed. Field answered in substance that the land had been "about stolen" from him and that he did n't have the money to pay Guthrie. On April 14, 1908, Guthrie filed a petition in the district court against Field, alleging the sale of the property to him, and asking judgment for the price; he also caused an attachment to be levied upon the land as the property of Field, but no service was obtained and the proceeding was abandoned. On May 8 or 10, 1908, a stranger came to Guthrie with the deed, the blank still remaining unfilled, and asked him to insert therein his own name (that of the stranger). Guthrie, after examining the deed, which was handed to him for the purpose, returned it, saying that he had received nothing for it, refusing to fill the blank, and forbidding the stranger to do so, or to record the deed. On May 12, 1908, the deed was filed for record, containing the name of the Osage Live-stock Company as the grantee. On May 16, 1909, J. W. Riffie, of Kansas City, in closing a deal involving other property, accepted at a consideration of $800 a deed from that corporation, he acting in good faith, in reliance upon the record, and without notice of any irregularity. On June 17, 1908, Guthrie brought this action, seeking to set aside the two conveyances described.

The plaintiff contends that the original deed was absolutely void, and incapable of becoming a source of title in anyone, because no one but Field had authority to fill in the blank, and he appears not to have done so, inasmuch as the deed was shown to have left his hands without the name of any grantee having been inserted. The modern and, as we think, the better rule is that authority may be given by parol to insert the name of a grantee in a deed, even after delivery, and such au-

thority may be implied from the circumstances. (2 Cyc. 159, 160, 168-172; 3 Enc. L. & P. 431-435.) We do not regard it as material by whose hand the blank was filled. If Field had complied with his instructions in all other respects—if he had collected the $2000 and remitted it to Guthrie—the fact that a representative of the Osage Live-stock Company, instead of Field, wrote in the name of the corporation, after the expiration of the thirty days, would hardly be deemed a sufficient ground to avoid the deed. The act of writing the name would have been essentially that of Field, though done by another hand. If the blank deed had been stolen from Field, and the thief had inscribed the name of a grantee, an entirely different situation would be presented. But Field's statement was that the land —not the deed—had been "almost stolen" from him, and this negatives the idea of a surreptitious taking. If Field delivered the deed in blank his breach of trust was as pronounced and the probable effects as readily to be anticipated as though he had first filled in the name of a grantee.

The effect of the delivery of a deed executed in blank must depend upon the circumstances, and upon the manner in which the question is raised. In Iowa the rule is firmly established that "one who takes a conveyance of property by delivery of a deed executed and delivered to his grantor by a prior owner and blank as to the name of the grantee becomes a purchaser without notice as effectually as though his grantor had executed a direct conveyance." (*Hall v. Kary*, 133 Iowa, 465, 470.) In *Creveling v. Banta*, 138 Iowa, 47, 55, doubt is expressed as to the wisdom of the rule, but only on the ground that it gives opportunity for concealing property from creditors. We need not determine, however, what the immediate effect would have been if Field had delivered the deed to the Osage company in violation of his instructions, but for a fair consideration and without notice of any wrong. Whether

(in accordance with the view taken in *Lund v. Thackery*, 18 S. Dak. 113) the mere existence of the blank would have prevented the company from acquiring rights as an innocent purchaser—would have charged it with the duty of learning the actual scope of Field's authority—need not be decided. The trial court was justified in finding that Field did violate his instructions and that the Osage company was chargeable with notice of the fact. Little evidence was available concerning the actual negotiations attending the delivery of the deed, and the circumstances shown did not compel a finding that the company acted in good faith.

It follows that under the evidence and findings the deed did not pass title—that as between Guthrie and the Osage company it could have been set aside. Riffie, however, stands upon a different footing. Either he or Guthrie must suffer by the wrongful act of Field. Riffie has been diligent throughout. His conduct has been that of the ordinary business man. He had no reason to suspect any irregularity and no means of ascertaining the real facts except by making an unusual investigation for which there was no apparent occasion. Guthrie, on the other hand, by intrusting Field with the blank deed, gave him the power to make a perfect record title in anyone he might choose. Guthrie intended that Field should fill in and deliver the deed, but only upon certain conditions. Guthrie reposed confidence in Field that he would act in accordance with his instructions, knowing that if he did not some innocent person might be misled. Field delivered the deed contrary to his instructions, and the consequence followed that might have been anticipated if he were to prove unfaithful—a stranger to the transaction parted with his money having every reason to suppose he was obtaining a good title. Under these circumstances the loss must fall upon Guthrie rather than upon Riffie. The principle involved is thus stated:

"It is a well-settled principle, applicable to both negotiable and nonnegotiable contracts, that, where a per-

son, with intent to execute a contract, delivers to another an incomplete instrument, and such other has authority, either expressly given or implied by law, to complete the instrument, such instrument is enforceable in the hands of a purchaser for value and without notice, notwithstanding the blanks have been filled up in a manner· violative of the authority conferred.

"This doctrine is based on principles of agency. The filling of such blanks in a wrongful manner by a person having express or implied authority to fill them in another way is deemed to be a breach of confidence merely, and is held to be within the scope of the principle that, where one of two innocent persons must suffer through the wrongful act of a third person, the loss must fall on that one who has reposed confidence in such third person and thereby enabled ·him to perpetrate the wrong." (3 Enc. L. & P. 440.)

The peculiar applicability of the principle to the situation here presented is illustrated by a distinction thus pointed out:

"The courts which hold to the doctrine of estoppel by negligence in execution base their holding on the maxim that, where one of two innocent persons must suffer, that one must bear the loss whose conduct made it possible. But, as has been pointed out in many well-considered cases, this principle applies only where one of the two innocent parties has reposed confidence in the person whose wrongful act occasioned the loss, and consequently is not properly applicable where the instrument was complete when it left the maker's hands and the person who made the alteration had no authority, express or implied, to do so." (3 Enc. L. & P. 445.)

The weight of authority sustains the view, although there is some conflict, that no title can be acquired, even by an innocent purchaser, in virtue of the unauthorized delivery of a deed deposited as an escrow. (16 Cyc. 581; 17 L. R. A. 511, note.) This is put on the ground that the grantor has been guilty of no negligence. If he is shown to have been negligent the rule is otherwise. (66 Am. St. Rep. 201, 202, note.) An obvious distinction is to be noted between depositing a completed deed

to be delivered upon conditions, and intrusting to another a paper which at his will may be converted into an instrument, attested as genuine by the real signature and acknowledgment of the grantor, purporting to convey the property to anyone the holder may select. One who arms another with such an uncontrollable power must know that, if his chosen agent shall prove dishonest, that is likely to happen which in fact happened here, and if such result follows it must be regarded as the consequence of his own imprudence. In acknowledging a blank conveyance before an officer, a grantor in effect declares it to be a deed, which it is not so long as its terms are incomplete. Having purposely put forth his solemn declaration that he has signed the instrument as a complete deed, when he has not in fact done so (expecting the custodian to find a purchaser, fill in the blank, and effect a transfer of title), he is answerable for the consequences if another innocently suffers loss through relying upon such assurance, and he can not avail himself of the plea that a blank deed is no deed. Where one intrusts a completed deed to another he so far retains means of control that by an action against the grantee he can bring notice of a controversy to a possible purchaser—a method not available where no grantee is named.

In *McNeil v. Jordan,* 28 Kan. 7, one who was induced by her agent to sign and acknowledge a deed to him, supposing it to be a different instrument, was held to be bound by it, when the rights of an innocent purchaser had intervened. The court there said:

"Where a person not illiterate or of feeble mind, possessed of legal capacity to make a contract, executes and acknowledges a deed without ascertaining its character and extent, upon the representations of another, he puts confidence in that person, and, if injury ensues to an innocent third person by reason of that confidence, his act is the means of that injury, and he ought to answer to it." (p. 15.)

An instrument signed under such circumstances would be deemed a forgery (26 L. R. A., n. s., 138, note; 17 A. & E. Ann. Cas. 705, note) and upon that ground has been held incapable of supporting a title even for the benefit of an innocent purchaser (*McGinn v. Tobey,* 62 Mich. 252). In the case cited, however, the conclusion was also based upon the view that the owner of the land was not in fact negligent, although he signed the deed without reading it, since he had reason to rely upon the statements made to him.

In *The State v. Matthews,* 44 Kan. 596, this court, speaking of a deed executed in blank, said:

"The directions of the maker with reference to filling the blank were oral, the instrument was filled up in the absence of the maker and not in accordance with but contrary to her directions, and to her injury; but the parties now claiming benefits under it . . . acted innocently and in good faith, and without the slightest knowledge of . . . fraud or of the imperfections or infirmities of the instrument when it left the hands of the maker, . . . and they parted with value on the strength of the instrument as it appeared when they or either of them first saw it, and as the maker . . . and her agent . . . made it to appear. In all such cases the weight of authority is that the instrument will be held to be valid to the extent of the innocent party's rights under it, or the rights which he or she would have under it if it were valid. . . . This is founded upon the general principle of law often announced by courts, and which has become axiomatic, 'that whenever one of two innocent persons must suffer loss on account of the wrongful acts of a third, he who has enabled the third person to occasion the loss must be the person who shall suffer.' . . . It is almost universally held that whenever an instrument is procured from one person by the fraud or villainy of another, even if such fraud or villainy should amount to a criminal offense, if all the rights which the instrument apparently gives should at that time or afterward be transferred to another, who should be an innocent and *bona fide* holder for value, the innocent and *bona fide* holder could enforce the instrument against the maker, although the maker might also be an

innocent person. . . . In such a case the maker would be estopped from claiming that the instrument was void as against the innocent *bona fide* holder. There may be some authorities that hold a contrary doctrine; but if so, we do not choose to follow them." (pp. 604, 605.)

The case of *Stone v. French*, 37 Kan. 145, is cited in support of the plaintiff's contention, but we think it wholly consistent with the views already expressed. There a deed signed and acknowledged, but not delivered during the life of the grantor, after his death reached the hands of the grantee and was recorded. It was held that one purchasing upon the faith of the record acquired no rights, upon the ground that the owners of the land (the heirs of the person named as grantor), not having been in any way negligent, could not be deprived of their property by the acts of a person for whose conduct they were in no way responsible. In the opinion it was said:

"A deed not delivered, but wrongfully in the hands of the apparent grantee, without fault or negligence on the part of the owner of the land, is unlike a deed not delivered, but which, through the fault or negligence of the owner, has been permitted to get into the hands of the apparent grantee." (37 Kan. 151.)

In *Wiggenhorn v. Daniels*, 149 Mo. 160, a landowner executed a deed in blank, which was wrongfully filled in and recorded. He was allowed to prevail against one who claimed to be an innocent purchaser on the faith of the deed. There, however, the defeated claimant had no title in the deed referred to, a purported conveyance from him turning out to be a forgery.

In *Westlake v. Dunn*, 184 Mass. 260, the owner left a blank deed with an agent to deliver upon the payment of the purchase money. A proposed buyer obtained the deed from the agent by representing that he wanted to show it to a friend who was to furnish a part of the price, and that he would return it in a few moments. Instead of doing so he filled in his own name and raised

money upon a mortgage. The court held that the mortgagee could not recover, saying that neither the owner nor the agent had reason to suspect that the deed would be used as it was, and that they owed no duty to anyone to see that it was not so used, and therefore could not have been negligent in that respect. An instrument in the form of an executed deed, save that no grantee is named, has in one sense no legal effect. But as it is manifestly adapted to the use to which it is often put— to enable the holder to accomplish a transfer—it would seem to be within the reason of this language, used of a nonnegotiable certificate of indebtedness assigned in blank:

"If the owner of the instrument intrusts it to another, he does so charged with notice of the power to deceive which he is putting into that other's hands, and if deception ·follows he must bear the burden. . . . It can not be said that the owner is free from all obligation to contemplate the possibility of wrongdoing by a third person." (*Scollans v. Rollins,* 179 Mass. 346, 353.)

The Westlake-Dunn case, however, differs from the one at bar in that the actual perpetrator of the fraud had not been intrusted with the delivery of the deed, but had obtained possession of it under the pretense of desiring it for a temporary purpose, his attitude being much the same as though he had taken it surreptitiously.

While for the reasons indicated the judgment must be reversed, it does not follow that the plaintiff should be denied all relief. Riffie paid only $800 for the conveyance from the Osage company. There was a mortgage upon the land, but he did not become personally responsible for its payment. He appears to have executed a deed to the property, but as this was after the commencement of the action it can not affect the result. Guthrie would be entitled to have the title quieted in himself except for the fact that Riffie has suffered loss through his negligence and misplaced confidence. The

extent to which Guthrie's right is thus qualified is measured by the amount of the loss. The principle upon which Riffie is protected does not require that he shall enjoy the full fruits of his bargain with the Osage company—merely that he shall be saved from actual loss. This result will be accomplished if he is paid $800 and interest. Guthrie should have an opportunity to make that payment, and thereupon to have his title quieted. If he elects not to do so, or fails to do so within a time to be fixed by the trial court, judgment should be rendered for Riffie.

The judgment is reversed and the cause remanded for proceedings in accordance herewith.