Argued October 13, affirmed November 9, 1920.

## HARTH *v*. POLLOCK.

(193 Pac. 202.)

**Deeds—Deed, With Grantee's Name Left Blank, Conveys No Title.**

1. A deed executed, but with the name of the grantee left blank, conveys no title while in that condition.

**Deeds—Blank Deed, When Authorizedly Filled in, Passes Title.**

2. Where one delivers possession of deed, with name of grantee left blank, to another, with oral authority to fill in the blank with the name of a prospective purchaser, and such blank is so filled in and delivered in pursuance of such authority, the deed will pass the title.

> [On the question of validity of deed to blank grantee, see notes in Ann. Cas. 1912A, 538; Ann. Cas. 1914D, 390.]

**Estoppel—Innocent Person, Making Injury Possible, must Suffer.**

3. Where one of two persons must suffer by reason of the wrongful act of a third, the person whose act or omission made the injury possible should suffer.

**Mortgages—Owner Delivering Deed to Broker, Who Filled in Own Name, must Suffer, Rather Than Subsequent Mortgagee.**

4. Where owner of land negligently delivered deed to broker with authority to fill in name of prospective purchaser as grantee, and where broker filled in own name and recorded deed and executed mortgage thereon to innocent third person, the owner, having put it in the power of his agent to defraud, must suffer the loss.

**Mortgages—Possession of Land by Owner's Tenants Held not Notice That Land was not Owned by Mortgagor.**

5. Possession of land by owner's tenants was not notice to mortgagee that mortgagor who had fraudulently filled in and recorded

blank deed given him by owner for prospective purchaser was not in fact such purchaser, and did not put mortgagee on inquiry with regard thereto where owner had told tenants that he had sold the property and to pay rent to new purchaser.

**Vendor and Purchaser—Possession by Another Than One Claiming Title Often Sufficient to Put Purchaser on Inquiry.**

6. The possession of land by one other than the person claiming title is a fact sufficient, in many instances, to put the intending purchaser upon inquiry as to the nature and extent of such possession.

From Multnomah: JOHN P. KAVANAUGH, Judge.

Department 2.

This was a suit brought by plaintiff to have canceled and declared void a mortgage executed by H. C. Irwin upon Lots 9, 10 and 11, Block 4, Greenwood, in the City of Portland, Oregon.

The complaint alleged that about June 3, 1918, Irwin, who was a real estate broker in the City of Portland, informed plaintiff that he had a purchaser for the above-described premises, who would purchase the same for $2,500 and pay $1,000 cash upon the delivery of a deed and secure the balance by a purchase price mortgage on the premises; that on June 3d plaintiff, at the request of Irwin, executed and acknowledged a deed to the premises with the name of the grantee in blank and left the same in Irwin's possession, upon the express condition that Irwin would hold and keep the same until the sale was ready to be consummated upon the terms and conditions above alleged; that afterwards, on the thirteenth day of June, 1918, the said Irwin wrongfully and fraudulently and without plaintiff's knowledge or consent, inserted his own name as grantee in said deed and wrongfully and fraudulently and without plaintiff's knowledge or consent, caused the same to be recorded in Book 759, page 118, Deed Records of Multnomah County, Oregon, and the said Irwin, at

the same time and contemporaneously therewith, wrongfully and fraudulently executed and delivered to the defendant, James Pollock, a pretended mortgage on said premises in the sum of $500, which said pretended mortgage is of record in Book 684, page 106, Mortgage Records of said Multnomah County, Oregon; and that said pretended mortgage is a cloud on plaintiff's title to said premises.

Defendant Pollock answered, denying plaintiff's ownership of the property on June 13th, or since said date; admitted that Irwin was a real estate broker, but denied any knowledge of the alleged transaction between plaintiff and Irwin; denied knowledge as to whether Irwin wrongfully or fraudulently or without plaintiff's consent inserted his own name as grantee in said deed, or caused the same to be recorded, but admitted that after said deed was recorded Irwin executed and delivered to defendant Pollock the mortgage set forth in the complaint; denied any knowledge or information sufficient to form a belief as to whether Irwin executed said mortgage wrongfully or fraudulently as to plaintiff; denied that said mortgage was wrongfully or fraudulently executed as to defendant, and that said mortgage was a *pretended* mortgage, or that it constituted a cloud on plaintiff's title.

Defendant Pollock, for a further and separate defense, set up that prior to June 13, 1918, plaintiff was the owner of the property described in the complaint; that prior to June 13th plaintiff duly made, executed, acknowledged, and delivered to defendant Irwin a deed to said premises, in all respects regular, but with the name of the grantee left blank, and authorized Irwin to insert therein the name of the grantee; that thereafter and prior to June 13, 1918,

Irwin inserted his own name as grantee; that on June 13, 1918, said deed was duly recorded; that on said date Irwin—representing himself to be the owner of said property—applied to defendant to loan him $500, and accept a mortgage on said property as security therefor, and delivered to defendant Pollock an abstract of title showing good and sufficient title to said property in defendant Irwin; that defendant Pollock, in company with defendant Irwin, made a personal inspection of the property and found the same to be in possession of a tenant, who recognized Irwin as his landlord, and that defendant—relying upon said deed record and the representations of Irwin—did loan him the sum of $500, taking as security a mortgage upon the above described premises. Then follow allegations sufficient to fully show defendant Pollock's ignorance of any fraud or breach of trust on the part of Irwin.

Another further and separate answer set up the same facts by way of estoppel.

A third count set up the mortgage and a breach of its conditions, and prayed for a foreclosure.

The new matter in defendant Pollock's answer having been put in issue by appropriate denials, there was a trial and findings by the court in favor of defendant Pollock, and a decree foreclosing his mortgage, from all of which plaintiff appeals.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Franklin K. Korrell* and *Mr. Wm. A. Carter,* with an oral argument by *Mr. Korrell.*

For respondents there was a brief over the names of *Mr. Carl M. Little* and *Messrs. McCamant, Bron-*

*augh & Thompson,* with an oral argument by *Mr. Wallace McCamant.*

McBRIDE, C. J.—The facts in this case admit of little dispute. Irwin, having been convicted and sentenced to the penitentiary for a fraud upon the plaintiff, did not appear either by pleading or as a witness at the trial, and the circumstances accompanying the deposit of the deed with him by plaintiff must be taken to have been as detailed in plaintiff's testimony, which was to the effect that about May 1, 1918, he listed the property in question with Irwin for sale, the terms to be $1,000 cash and $1,500 secured by a first mortgage on the premises; and that about May 15th Irwin phoned him that he had a buyer for the property, and requested plaintiff and his wife to come to the office. The witness then testified as follows:

"A. Well, when we came to the office he said that he had a buyer for the property and expected him to arrive soon. He said it was a man from Salem, and we waited there for some time, and he done telephoning, long distance, he said, and finally he told me that the man could not come that day, but he would come the next day, he would be in his office the next day.

"Q. What was done, if anything, about making out a deed—what was said about it?

"A. Well, after we talked the matter over he proposed that we make out the deed and leave it there and save Mrs. Harth coming back, as she was not feeling well. It would save her coming on another trip down town.

"Q. And did you make out the deed?

"A. Yes, we made out the deed and he said he did not have the man's name, and said that they could fill it out when the man arrived the next day.

"Q. What understanding, if any, did you have with Mr. Irwin in regard to holding and disposing of this deed?

"A. I had a perfect understanding that there was nothing to be done with the deed until I came there, and I would' take the deed to my attorney, and that we could make out all the papers, that all the papers had to be made out by my attorney; that is, the mortgage, and to insert the name of the purchaser.

"Q. Mr. Harth, will you please state whether or not you ever at any time authorized the defendant, H. C. Irwin, to insert his own name or the name of anyone else, as grantee, in your deed?

"A. No, sir; positively not. If I wanted Mr. Irwin's name in there I could have inserted it because he was right there; but I positively told him that the deed could be left there with the understanding that nothing was to be done until all the papers—that I could take the papers to my attorney and have the mortgage made out and then the deed would be delivered.

"Q. What was done, if anything, by you toward paying the commission; did you pay a commission?

"A. Yes, sir; he said as he had to divide the commission with another man, he would like to have me give him a check for $125 for the commission, as he had to divide it with the other agent; and I gave him a check of $125.

"Q. What was the date of the making of this deed, when you made out the deed?

"A. I think it was the 3d of June, but I am not positive.

"Q. After you made this deed, Mr. Harth, and left it there, when did you next see Irwin?

"A. I seen him several times. I went there several times, and he always had some excuse that the man had not arrived. But I went there, and he was not there and he left word with his clerk that I was to meet him at the Savings Bank & Trust Co. in town to close up the deal.

"Q. What did you do, did you meet him?

"A. I did, and he told me that he had—that the Salem man had given him a check for $1,000, and he had wired to St. Paul, to find out whether the check was all right. I told him to let me see the check, and he hesitated and talked, and I said, 'I want that

check; you give me that check; if you have got a check for $1,000 I want it, if that was paid'; and he refused and got confused and made all kinds of excuses and then I got suspicious and I went to my attorney to see what to do.''

Upon investigation plaintiff discovered the fact that Irwin had filled in the blank in the deed by inserting his own name, whereupon plaintiff had Irwin arrested, and he is now under sentence for his participation in the fraud upon plaintiff. Plaintiff had not been acquainted with Irwin until he listed the property with him for sale.

The defendant Pollock testified, in substance, that he met Irwin in response to a "blind" advertisement in the "Oregonian"; that he went to Irwin's office on June 12th, at which time the deed was shown him, and Irwin told him that he wanted to borrow $500 on the property, and that same afternoon he went out with Irwin to inspect the property; that he found it occupied by Mr. and Mrs. Beaudette as tenants; that while he was inspecting it Mrs. Beaudette told him she liked the place, and said that she was afraid they would have to move, as Mr. Harth had told her he had sold the place to Mr. Irwin, and said Mr. Harth would not take the rent, but had directed them to pay it to the new proprietor, to the man that bought the place; that afterwards she said to Irwin in defendant's presence, "Well, I suppose you are the new owner of this and we will have to pay the rent to you," and Irwin answered, "Yes." Thereafter witness told Irwin that if he could furnish a good abstract and everything was all right he would let Irwin have the money. Witness testified that Irwin's name was in the deed as grantee when it was shown to him; that it was written in in typewriting, the same as the body of the deed, the names of the witnesses

only appearing in ink; that he demanded an abstract, which was furnished by Irwin the next day, and after it had been examined and approved by Mr. Little, defendant's attorney, and the mortgage executed by Irwin, Mr. Little, by defendant's direction, gave Irwin the money, less some $13 paid in connection with examination of the abstract and recording.

Mrs. Nellie Beaudette, a witness for plaintiff, testified that she and her husband occupied the premises in question upon a lease running from March, 1918, to March, 1919; that on June 12, 1918, defendant Pollock, in company with Irwin, visited the premises; that Irwin introduced himself saying that he was the agent of Mr. Harth and said, "I am the present owner of this property, and have brought Mr. Pollock out to have him loan me some money on this property," whereupon witness said: "Are you the owner? That is what we wanted to find out; we want to rent the property from you if you have bought it from Mr. Harth." And Irwin said: "Yes, it is mine." This was said in the presence and hearing of Pollock. The witness continued as follows:

"Q. (By the Court.) Did you have some knowledge that Mr. Harth was thinking of selling it?

"A. Yes, we had been ordered to find a new place. That was the agreement, if he sold that we were to move out in 30 days.

"Q. Was that in the lease?

"A. Yes, sir.

"Q. What was you to receive in case Mr. Harth sold and you were required to move?

"A. We were to receive $100 in case we should move out during the year.

"Q. Was there anything said at the time by you in regard to this lease which you held from Mr. Harth?

"A. I asked Mr. Irwin in that case how about the

lease, was we to make out a new one?   He said no,
leave it in Mr. Harth's name.

"Q. Was that in the presence of Mr. Pollock?

"A. Yes.

"Q. (By Mr. McCamant.) Mrs. Beaudette, didn't
you say something in that interview about Mr. Harth
having told you to pay rent to the purchaser when
the property was sold?

"A. Yes.

"Q. You said that in Mr. Pollock's presence?

"A. Yes; we were trying to find out who the new
buyer was, and we could not find out.   We were to
hold the rent back until we found out.

"Q. When was the rent due?

"A. The rent was due the 1st of June.

"Q. And you did not pay the 1st of June rent at
that time?

"A. No, Mr. Harth refused it because it was in Mr.
Irwin's hands.

"Q. You had tendered it to Mr. Harth on the 1st
of June?

"A. No, not on the 1st; I believe it was on the 6th.

"Q. And Mr. Harth had declined to take the
money?

"A. Yes, sir.

"Q. And told you it was in Mr. Irwin's hands?

"A. Yes, sir.

"Q. So, when Mr. Irwin claimed to be the owner
of the property you thought he told the truth?

"A. Well, he had received the rent on the 10th of
June from my husband and signed the receipt that
he was agent for Mr. Harth; I didn't know whether
he told the truth or not; I didn't believe him; he
said the lease should run in Mr. Harth's name, and
that was inconsistent.

"Q. But you did say in the presence of Mr. Pollock
that Mr. Harth told you to pay the rent to the pur-
chaser?

"A. Yes, sir."

E. A. Beaudette was called to identify a receipt for
rent paid by him to Irwin on June 10th, which was

offered by plaintiff's counsel as tending to show that on that date Irwin signed as agent for Harth. The offer was rejected, but the receipt is here with the testimony, and indicates that on June 10th Irwin receipted for the rent for that month, signing himself as "Agent for Mr. Harth." On cross-examination witness testified that Mr. Harth, prior to June 10th, had told him to pay the rent to the new owner, and that he had communicated this fact to his wife before June 12th.

Without attempting to go into the testimony in detail, it is sufficient to say that in our judgment the evidence establishes these facts:

(1) That the plaintiff constituted Irwin his agent to negotiate a sale of the property.

(2) That plaintiff and his wife executed the deed in question .with the intent that when a sale should be finally completed, and the mortgage for the balance of the purchase price approved by his attorneys, the name of the grantee should be inserted, and the deed delivered to the purchaser.

(3) That Irwin was a comparative stranger to plaintiff, and that before depositing the deed with him plaintiff made no inquiry as to Irwin's standing or trustworthiness.

(4) That Irwin, in violation of the confidence reposed in him by plaintiff, wrote his own name in the deed as grantee, and in this condition caused it to be recorded and represented to defendant Pollock that he was the owner of the property.

(5) That the tenants in possession of the property said, in substance, in the presence of the defendant Pollock, that plaintiff had directed them to pay the rent to the purchaser, and had himself declined to receive the same.

(6) That plaintiff had made such statements to the tenants.

(7) That Pollock acted in good faith throughout the whole transaction, and fully believed that Irwin was the owner of the property, and advanced the $500 and accepted the mortgage under that belief.

(8) That in view of the circumstances he was justified in so believing, and exercised reasonable and ordinary prudence in ascertaining the title to the property.

(9) That Irwin had in fact no authority to write any name in the blank left for the name of the grantee until the conditions under which the property was listed were complied with, and plaintiff, or his attorney, had examined and approved the mortgage to be given for the balance of the purchase price.

These facts simmer down to a single fact, namely: plaintiff intrusted to a comparative stranger a deed, with the name of the grantee in blank, upon oral conditions as above stated, and that person, in violation of his trust, filled in the blank, and used the instrument as a means to obtain from an innocent purchaser the sum of $500, advanced upon the faith of such instrument.

1, 2. The question is, Which shall lose by the transaction? The grantor in the deed, who, by his confidence in a stranger, made the transaction possible, or the mortgagee, who, by his confidence in the record and the statements of the tenants of plaintiff, was induced to advance the money. It is well established that a deed executed but with the name of the grantee left blank, conveys no title while in that condition: 18 C. J. 176, § 57, and cases there cited.

97 Or.—43

It is equally well settled by the later authorities in this country that where one delivers possession of such a deed to another, with even oral authority to fill in the blank with the name of a prospective purchaser, and such blank is so filled in and delivered in pursuance of such authority, the deed will pass the title. The cases on this branch of the subject are fully collated in 18 C. J. 176, and notes, and in 1 R. C. L. 1009, § 41. But the instant case does not come strictly within the purview of any of the cases cited in the notes to the above-mentioned sections.

No title passed by the delivery of the blank conveyance left with Irwin, and, as he was not authorized to fill in the blank with his own name, or indeed with any name, without the grantor's concurrence, the deed never became effective as a deed; he had no title and could convey none, as between himself and the grantor. The right, therefore, of defendant Pollock to insist upon his mortgage does not rest upon its inherent value as a mortgage, but if he can recover at all it must be upon the theory that the plaintiff, having by his negligent act of putting into the hands of Irwin an instrument with the name of the grantee left blank, thereby put it in Irwin's power to defraud Pollock by writing his own name in the blank space left for the name of the supposed grantee.

3. We have here a case where one of the two innocent persons must suffer by reason of the wrongful act of a third person. And the rule is that where such a condition exists the person whose act or omission made the injury possible should suffer. Decisions of eminent courts upon cases substantially parallel to the present, while few in number are not wanting.

In *State* v. *Matthews,* 44 Kan. 596 (25 Pac. 36, 10 L. R. A. 308), the facts are almost parallel to the case at bar. Matthews, falsely pretending to Mrs. Wallace that he had a purchaser for her property, induced her to leave with him a conveyance regularly executed by her, but with the name of the grantee left blank, with the understanding that if the contemplated purchaser paid Wallace $2,500 his name should be inserted and the deed delivered, but if the sale was not consummated the deed was to be destroyed. Matthews filled in the blank with his own name, caused the deed to be recorded, procured an abstract showing the title to be in him, and, equipped with this, induced one Jonathan Thomas to loan him $382, on the security of a mortgage upon the land. He was indicted for fraudulently obtaining money from Thomas under false pretenses. The court, speaking through Valentine, J., held that, in order to convict a person of the crime of obtaining money under false pretenses, the state must show that the person who furnished the money was actually defrauded, and that under the circumstances Thomas, being an innocent purchaser, could not have been defrauded, as Mrs. Wallace would be estopped to deny that the deed did not convey title. The substance of the opinion is fully stated in the syllabus, from which we quote:

"DEED — *Substituted Grantee—Fraud — Notice.* — Where a deed of conveyance of real estate, perfect in form, except that the grantee's name is left blank, is duly executed and acknowledged, and afterward the blank is filled contrary to the instructions of the grantor, and to his or her injury, with the name of a person not intended by the grantor to be the grantee, and with full knowledge on the part of such substituted grantee, *held,* that the deed is void as to such substituted grantee, or as to anyone with notice of the fraud.

"FRAUDULENT GRANTEE — *Valid Mortgage.* But afterward such deed is recorded, and then the substituted and fraudulent grantee procures a loan of money from an innocent person, and executes a mortgage on the property conveyed by the deed; and such innocent person loans the money on the strength of such deed and of the false pretenses made by such grantee that he had purchased the real estate conveyed by the deed, and that he was then the owner thereof in fee: *Held,* that the mortgage will be held to be valid.

"Loss—*Who to Suffer.*—Whenever one of two innocent persons must suffer loss on account of the wrongful acts of a third, he who has enabled the third person to occasion the loss must be the person who shall suffer."

See, also, *Guthrie* v. *Field,* 85 Kan. 58 (116 Pac. 217, 37 L. R. A. (N. S.) 362).

In *Clemmons* v. *McGeer,* 63 Wash. 446 (115 Pac. 1081), plaintiffs were the owners of certain lands in Tacoma, upon which one Bell contracted to erect a house, and was to be paid therefor in part by a conveyance of the lands in controversy. When the building was partly constructed Bell requested a conveyance, representing that the material furnished and work done upon the building amounted to $725, the agreed value of the land involved. Plaintiff then executed a deed to the land, leaving the name of the grantee blank. Bell was unable to procure receipts for more than $265, showing payment for the material furnished and work done on the house, and requested plaintiff to leave the deed with him until next morning, when he would produce receipts, aggregating $725. Relying upon this representation plaintiffs left the deed with Bell, who took the deed to McGeer, and negotiated a loan for $650 upon the premises, and in-

serted in the deed the name of G. M. McGeer as grantee, and delivered it to him as security for the loan. The court held that the possession of the deed by Bell constituted sufficient implied authority in him to fill in the blank with the name of the grantee and that the conveyance must be upheld to the extent of McGeer's interest in the land.

The Supreme Court of Iowa has held to the same doctrine in numerous decisions: *Swartz* v. *Ballou,* 47 Iowa, 188 (29 Am. Rep. 470); *Hall* v. *Kary,* 133 Iowa, 465 (110 N. W. 930, 119 Am. St. Rep. 639); *Crevling* v. *Banta,* 138 Iowa, 47 (115 N. W. 598); *Augustine* v. *Schmitz,* 145 Iowa, 591 (124 N. W. 607), and other cases.

A contrary view is expressed in cases from other jurisdictions. Notably is *Westlake* v. *Dunn,* 184 Mass. 260 (68 N. E. 212, 100 Am. St. Rep. 507); and *Barden* v. *Grace,* 167 Ala. 453 (52 South. 425, Ann. Cas. 1912A, 537). Both of these cases are apparently in point, but we do not concur in their reasoning. There is, however, in *Borden* v. *Grace* a significant distinction which may here be noted. There was no plea of estoppel by the defendants (plaintiffs in error) as in the case at bar. Concerning this, the court remarked:

"The respondents, by their answer, rely entirely upon the facts of the transaction, denying the allegations of the bill, and do not, by any pleading, raise the question of estoppel, which should have been pleaded, * * if available at all"—

thus indicating that there was in the judicial mind the idea that if an estoppel had been pleaded in that case, as it was in this, the result might have been different.

4. We see no reason to differentiate this case from the multitude of other cases where persons have signed their names to blank notes or other negotiable paper, and left it in the hands of those who have made an unconscionable use of it. The fact that the instrument in this case was a deed instead of a negotiable instrument is a distinction without a logical difference. Neither, in the view of the writer of this opinion, is the intent with which the conveyance was left with Irwin of importance here. When a man, leaves with a stranger an instrument executed and acknowledged with every legal formality necessary to indicate that he has made a conveyance of the property, but with the name of the grantee left blank, he ought in common prudence to contemplate the possibility that the depositee, if dishonest, might make an improper use of such instrument, and if such use is made of it he, and not the person whom he has put it in the power of his agent to defraud, ought to suffer the loss.

The observations of the court in *Guthrie* v. *Field,* 85 Kan. 58 (116 Pac. 217, 37 L. R. A. (N. S.) 326), are very pertinent here.

"An obvious distinction is to be noted between depositing a completed deed, to be delivered upon conditions, and intrusting to another a paper which, at his will, may be converted into an instrument, attested as genuine by the real signature and acknowledgment of the grantor, purporting to convey the property to any one the holder may select. One who arms another with such an uncontrollable power must know that, if his chosen agent shall prove dishonest, that is likely to happen which in fact happened here; and, if such result follows, it must be regarded as the consequence of his own imprudence. In acknowledging a blank conveyance before an officer, a grantor in effect declares it to be a deed, which it is not, so long as its terms are incomplete.

Having purposely put forth his solemn declaration that he has signed the instrument as a complete deed, when he has not in fact done so (expecting the custodian to find a purchaser, fill in the blank, and effect a transfer of title), he is answerable for the consequence if another innocently suffers loss * * and cannot avail himself of the plea that a blank deed is no deed.''

5, 6. The argument, that plaintiff's possession of the property by his tenants was notice of his title, can have no place here.

The possession of land by one, other than the person claiming title, is a fact sufficient, in many instances, to put the intending purchaser upon inquiry as to the nature of such possession and its extent. In this case such information was volunteered by the tenants, and was perfectly consistent with Irwin's claim of ownership. When we consider the fact that Irwin exhibited a deed regular upon its face, and actually signed and acknowledged by the grantors, and the declaration of the tenants in possession that Harth had told them that he had sold the property and had directed them to pay the rent to the new purchaser, it is difficult to see what further inquiry Pollock should have been required to make before loaning his money on the strength of Irwin's apparent title.

While the case of *Allen* v. *Ayer,* 26 Or. 589 (39 Pac. 1), cited by counsel for appellant, has some features in common with the case at bar, there were other circumstances which distinguish it in principle. In that case the deed was not intrusted by the grantor to a stranger, but to a prominent and trustworthy member of the Oregon bar, and was obtained from him by false representations, he being guilty

of no fraud upon the ultimate purchaser. Under all the circumstances the court held that the grantor was not negligent in depositing the instrument with Judge Chenoweth to abide the event of the proposed trade, and, possession of it having been obtained by a trick, that there was no delivery to the alleged grantee. But in that case the grantor was in the actual possession of the property and it does not appear that the purchaser took any pains to discover the nature of his possession.

Here the property was in the actual possession of tenants of the owner who, as already noted, informed Pollock that the former owner had told them he had sold the property, and to pay the rent to the new purchaser, thereby confirming Irwin's statement that he had purchased the property. That plaintiff had made such a statement to his tenants is practically admitted by him. Thus unwittingly but negligently plaintiff placed it in the power of Irwin to deceive defendant Pollock and obtain a loan upon the strength of his apparent title.

This is not a suit to determine whether any title passed by the deed fraudulently filled in by Irwin. It may be conceded that in fact no title passed. We only hold that in the face of plaintiff's negligence he is estopped to assert that the mortgage, which his own negligent act enabled Irwin to palm off on Pollock as true and genuine, was in fact not such, when all the testimony indicates that Pollock used reasonable diligence to ascertain the state of the title.

The decree of the Circuit Court is affirmed.

AFFIRMED.

BEAN, JOHNS and HARRIS, JJ., concur.