Argued January 19; reversed March 14; costs disallowed
April 25, 1939

# HANSEN *v.* BELLMAN ET AL.

(88 P. (2d) 295)

Department 2.

*A. L. Gordon* and *Irving Rand,* both of Portland (Frederick H. Drake, and C. D. Christensen, both of Portland, on the brief), for appellants.

*Henry S. Westbrook,* of Portland (Walter E. Hempstead, Jr., of Portland, on the brief), for respondent.

BEAN, J. This is a suit to cancel certain deeds and mortgages involving real property in the city of Portland. A decree was rendered in favor of the plaintiff and defendants appeal.

The facts are delineated as follows: About twenty years prior to 1931 Louis Knerr had a $3,000 mortgage on the east half of Lots 3 and 4, Block 14, Williams Avenue Addition, in the city of Portland. He foreclosed this mortgage, and, according to the complaint, on August 31, 1931, became owner of the property, which consisted of a run-down and obsolete four-family flat. A few months prior to April 13, 1933, Mr. Knerr, in a deal with one John E. Wilson, had endeavored to trade the property to a grantee named Bishopric, but the deal fell through. He then arranged with said John E. Wilson, who was his grandson-in-law, to trade the property for five Pacific Northwest Public Service bonds. He had been compelled to take over a lot of property and wanted to dispose of the flats. He said, "I wanted to get rid of some of the property. At the time you couldn't sell anything of any kind." He did not make any inquiry as to the value of the bonds, but knew that they had depreciated in value. Three of the flats out of the four in the building were vacant. John E. Wilson worked up a trade with L. H. Bellman, and on April 13, 1933, Louis Knerr and his wife, Beatte Knerr, went to the office of Alexander Sweek, an attorney practicing in Portland, who prepared a war-

ranty deed in favor of L. H. Bellman as grantee. The deed so prepared was signed by the Knerrs and acknowledged before Mr. Sweek as a Notary Public, and was, as stated in the complaint, "regular and valid on its face," and "in such manner and form as entitled the same to be recorded."

The complaint alleges that the name of the grantee was later inserted but no attempt was made to prove this allegation and the evidence is that the deed was complete when subscribed and acknowledged, except for a mistake in property description which we will refer to later.

After the deed was prepared, subscribed and acknowledged, Louis Knerr and John E. Wilson went to the First National Bank of Portland with the deed and delivered the deed to the bank, together with a letter, which is set forth in the complaint, directing the bank to release the deed to the order of John E. Wilson when he had deposited for Mr. Knerr's account five Pacific Northwest Public Service bonds. The bank acknowledged receipt of the deed and of two insurance policies, but the insurance policies had already been left with the bank in connection with the prior Bishopric deed, which was still with the bank. It may be noted that the grantee in the deed had nothing whatsoever to do with the making of the deed or its deposit with the bank, and that Mr. Knerr, the grantor himself, chose the bank as his agent to deliver his deed. The letter to the bank does not mention bonds of any par value. The testimony indicated that on that day the Pacific Northwest Public Service bonds, of the par value of $1,000, were of the market value of $187.50, and $190 was the price asked.

After Louis Knerr and John E. Wilson had left the deed in the hands of the bank for delivery, Mr.

Knerr testified that during the night it came to his mind that the property description was wrong, in that the lot was described as "Albina Homestead" Addition, whereas it should have been described as in "Williams Avenue" Addition. He examined his tax receipts and after determining that the correct addition was Williams Avenue Addition, he informed Wilson of the mistake and according to his testimony, "Then Wilson came around a day or two or so afterwards, and I told him about it, so he said, 'Well, I have to go down to the bank and get it changed' ", and again, "Well, I showed him the tax receipt and I showed him that it is a mistake in there, so he said, 'Well, I have to go and get it changed, have to go down to the bank and get it changed.' That is about all there is to that." When he told Wilson about the mistake in description and Wilson said he would go to the bank and have it changed, Mr. Knerr said, "it would be all right on my account."

According to plaintiff's witness, Mrs. Day, who was custodian of the deed in behalf of the bank, Wilson came to the bank and told her there was a mistake in the deed. She got it from the files and Wilson took the deed back to the office of Alexander Sweek and Mr. Sweek made the correction and handed the deed back to Wilson, who left the office. Wilson, having possession of the deed which was complete in every respect, went to the office of the real estate brokers handling the trade for Mr. Bellman, and a three-cornered trade of the property, which involved Mr. Bellman's parting with a wheat ranch in Eastern Oregon for the house and lot, was consummated. The trade involved a loan of $1,000 and the defendant Esther Paulson, a cook in a logging camp in Eastern Oregon, through her agent Sidney H. Salomon, loaned Bellman $1,000 on the se-

curity of a first mortgage against the flats. Salomon had an abstract of title which was certified to April 15, 1933, examined. On or about April 18, 1933, the day the loan was completed, Salomon had the deed to Bellman and the mortgage to Esther Paulson recorded, and gave his check for the proceeds of the loan to Bellman. The same day Bellman executed a second mortgage for $750 in favor of the defendant, Frances Hamilton, and this mortgage was recorded. A day or so later Bellman conveyed the property, subject to the two mortgages, to the defendant, Dorothy E. Davies, as security for money due from him to the witness W. K. Deal, the father of Dorothy E. Davies, and this deed was placed of record.

The second mortgage in favor of Frances Hamilton was purchased by the defendant, Ruby W. Fortner, for a valuable consideration and without any notice of any dealings between Knerr and Wilson. Mrs. Fortner later transferred the mortgage to Linfield College and after the title was questioned was required to and did repurchase the mortgage from Linfield College and has since been the owner thereof.

In the latter part of April, 1933, a real estate broker named Lucas persuaded defendant, Dr. Roberts, a dentist practicing at Medford, to trade a Southern Oregon orchard property for the flats. Dr. Roberts and his daughter, Pauline, came to Portland and were shown the property and decided to make the trade. The deal was made, under the terms of which Dr. Roberts was to convey an equity in the Southern Oregon orchard and to enter into a contract with Dorothy E. Davies to purchase the flats, subject to the two mortgages for $500, payable in installments of $15 per month. Dorothy E. Davies executed a deed in favor of Dr. Roberts and put it in escrow, to be delivered when the $500 had

been paid. Shortly thereafter Pauline Roberts, daughter of Dr. and Mrs. Roberts, who had completed three years of her college course and had between $190 and $200 saved up, arranged with her father to purchase the property and paid him the money she had saved and assumed the contract with Dorothy E. Davies. She came to Portland and went into possession of the building which was then entirely vacant, the one tenant, a Mrs. Hussey, which Mr. Knerr had previously had having moved out. Pauline Roberts commenced improving and furnishing the flats. She secured employment as a stenographer in a law firm and lived in one flat and secured renters for the other three. Mrs. Hussey moved back in. Pauline Roberts inquired of her as to the former owners so that she might procure additional keys. She was told that the Knerrs had owned the place, so she went to their residence and informed them that she was the new owner and that she would like to have the keys. The Knerrs bemoaned their loss of the property and wished her luck and delivered the keys to her. This was in the summer of 1933.

Pauline Roberts remained in possession of the property for a period of two years or longer, paying taxes and paying the interest on the mortgages, improving the property and making monthly payments of $15 on the contract of purchase with Dorothy E. Davies. During this time Dorothy E. Davies assigned all of her rights under the contract to Rudy Wilhelm and the Dorothy E. Davies deed and contract were placed in the hands of Carl Christensen, an attorney practicing in Portland, and thereafter the monthly payments of $15 were made by Pauline Roberts to Mr. Christensen. When she had nearly completed paying out the contract she had an opportunity to trade the flats for some property near Medford, owned by a man named B. O. Lock-

wood. A trade was made and B. O. Lockwood went into possession of the flats and completed making the monthly payments on the contract of purchase. This was in the early part of 1936. When the $500 had been paid on the contract, Dr. Roberts was entitled to the deed of Dorothy E. Davies. He had, in the meantime, executed a deed in favor of Pauline Roberts, who in turn was obligated to make a deed in favor of B. O. Lockwood. To save circuitous conveyancing, the deed to Pauline Roberts was returned to Dr. Roberts and Dr. and Mrs. Roberts executed a deed directly in favor of B. O. Lockwood. This deed, as well as the deed from Dorothy E. Davies to Dr. Roberts, was placed of record in the Multnomah County Deed Records. Some time after Lockwood had acquired the title from Dr. and Mrs. Roberts, he made a trade, in April of 1936, with one Edward Case of Caldwell, Idaho. Lockwood executed his deed in favor of Edward Case, who went into possession of the property. Case presented his deed to the county clerk to be recorded and then discovered that the property was under the Torrens System of recording. Case consulted an attorney who advised him that in order to complete the Torrens chain of title he should obtain and record in the Torrens System another deed from Knerr. He thereupon interviewed Mr. Knerr who informed him "that he had lost that property several years before and had washed his hands of it and wouldn't have anything more to do with it." Knerr referred Case to his attorney, Mr. Hansen, the plaintiff. Case saw Hansen, who said he would see what he could do. Case testified:

"And later when I went to him, he said 'Nothing doing.' And in a few days' time I found that he had filed an action, this action that is pending now."

Hansen had persuaded Knerr to make out a deed in favor of Hansen, which he placed in the Torrens System of recording, and then he commenced this suit. Both Hansen and Knerr admitted that no consideration passed for the transfer to Hansen and that they were to share in any spoils obtainable in this suit. Some time later, Case, with his title questioned by this suit, commenced an action in the court at Medford against Dr. Roberts and Mrs. Roberts for the breach of warranty of their deed, which action was pending undetermined at the time of the trial of this suit.

■ Meanwhile Mr. Knerr, after he had informed Wilson that the deed in the bank had the wrong property description and had said it would be all right for Wilson to have the description changed to conform to the correct description, did nothing further about the property until about the first of May, 1933. He then went to collect the rent from Mrs. Hussey and was told by her that a new owner was collecting the rents. He made no demand for the rent or for possession and brought no action to assert any rights in or to the property and at no time since ever visited the property or paid any taxes or exercised any act of ownership over the property. On the contrary, he went to the bank to see if the bank had the bonds, and when he was informed that no bonds had been deposited he made inquiry of Wilson concerning the bonds. Wilson told him that he, Wilson, had ordered the bonds and told him where he had placed the order and gave him the order receipt. Knerr went to the brokerage firm where the order was placed and was there told that the order had been cancelled. He then looked up Wilson again and was informed by him that the bonds would probably be delivered in a few days, and Knerr stated he "was satis-

fied with that." Then he returned the order receipt to Mrs. Wilson. Knerr also went to the bank and had the bank send the two insurance policies on the building to the insurance companies for cancellation and return of the unearned premium, and he subsequently received and cashed checks for the premium funds.

In the early part of May, 1933, Knerr engaged Andrew Hansen, practicing attorney in Portland, the plaintiff in the present case. With Mr. Hansen as his attorney, Knerr, in June, 1933, commenced an action in the circuit court of Multnomah County against the bank for $3,000 damages for wrongfully delivering the deed to Wilson. He filed three different complaints, in one of which he alleged, as follows:·

"That on the 13th of April, 1933, in the City of Portland, County of Multnomah, State of Oregon, plaintiff and plaintiff's wife duly executed in writing a good and sufficient warranty deed in which plaintiff and plaintiff's wife were grantors and L. H. Bellman was grantee by which the above described real property was conveyed to said grantee upon the delivery of said deed, * * *".

Demurrers were sustained to each of his complaints and eventually a voluntary nonsuit was taken. A judgment for costs was entered against Knerr in favor of the bank. About a year later an accord and satisfaction was reached between Knerr and the bank, whereby the bank satisfied the judgment against Knerr and Knerr, in turn, executed and delivered to the bank a full release, accord and satisfaction of all claims and demands of every kind, nature and description.

While this action was pending, Pauline Roberts, who was in possession of the property, claiming under the Knerr deed, was given additional keys to the prop-

erty by the Knerrs and was told by them that they had bad luck with the property and they wished her better luck than they had had. Mrs. Knerr also informed Mrs. Hussey, as Mrs. Hussey said, that the property had been lost and that the bonds they obtained were no good, and this information was in turn given by Mrs. Hussey to Pauline Roberts.

The testimony shows that there was no knowledge on the part of Esther Paulson, the holder of the first mortgage on the property, or on the part of Ruby Fortner, the holder of the second mortgage on the property, or on the part of either of the grantees in possession, of any irregularity in connection with the delivery of the Knerr deed by Wilson.

We think that the plaintiff was barred by laches from commencing and prosecuting this suit.

The complaint admits the signing and the acknowledgement and complete regularity of the deed, and alleges a wrongful physical delivery by Wilson and asks that the deed be cancelled. It is true that the complaint describes the Knerr deed as void, but in other paragraphs it admits its validity and effectiveness. Knerr's own evidence is that he learned all about the delivery of the deed early in May, 1933, and at that time discussed the matter with Salomon, and with representatives of the First National Bank of Portland, Oregon, and others, including Wilson. On June 24, 1933, through his attorney, the present plaintiff, Knerr commenced an action in the circuit court of Multnomah County against the First National Bank of Portland, Oregon, for damages for the alleged wrongful delivery of the deed.

Plaintiff's predecessor, Louis Knerr, by pursuing the remedy against his delinquent agent, the First Na-

tional Bank of Portland, Oregon, for the loss he suffered by reason of the delivery of his deed, to an accord and satisfaction, cannot recover again from these defendants for the same loss: *McDonough v. National Hospital Association*, 134 Or. 451, 294 P. 351; *Ingram v. Carlton Lbr. Co.*, 77 Or. 633, 152 P. 256; *Stires v. Sherwood*, 75 Or. 108, 145 P. 645.

■ Louis Knerr, when he learned that the bonds had not been deposited in the bank and told John E. Wilson about the matter and Wilson said the bonds would probably be delivered in a few days, trusted Wilson and waived his right to object to the delivery of the deed. Plaintiff and his predecessor, Louis Knerr, were and are estopped by laches, ratification and acquiescence to claim that the Knerr deed was not delivered or to claim that no title passed thereby. By his acts at the time he found the property had been sold to Pauline Roberts and by his conduct when he gave Miss Roberts the keys to the house, he practically ratified and confirmed the deed to Bellman and ratified the possession of the property in Miss Roberts.

■ The record shows without question that about eighteen months after these transactions, after Knerr's election to recover from his delinquent agent, the bank, he had a settlement with the bank and reached an accord and satisfaction and gave the bank a release of all claim. He thus, with full knowledge of the facts and with the express approval of his attorney, the present plaintiff, received and accepted a full satisfaction for the alleged injury done him. Having done so, he is precluded from recovering the property for which he has been paid by this satisfaction and is precluded from recovering from these defendants. In *McDon-*

*ough v. National Hospital Association*, supra, at page 455 of the Oregon report, it is stated thus:

"The general rule is that when a plaintiff has accepted satisfaction in full for an injury done him, from whatever source it may come, he is so far affected in equity and good conscience that the law will not permit him to recover again for the same damages: Berkley v. Wilson, 87 Md. 219 (39 Atl. 502); Cleveland v. Bangor, 87 Me. 265 (32 Atl. 892, 47 Am. St. Rep. 326); Lovejoy v. Murray, 3 U. S. 1 (18 L. Ed. 129)."

Hansen, the plaintiff, knew all about the transaction and stands in the shoes of Louis Knerr.

In regard to the position that Knerr ratified the deed after learning that it had been manually delivered, we notice that what he did or omitted to do, as a result of which acts and omissions he and his nominal plaintiff are estopped by laches and acquiescence from asserting that the deed was not delivered, may be stated as follows: When informed by the tenant, after the deed had been delivered, that the new owner was collecting the rent, Knerr made no remonstrance, asserted no claim of ownership and took no action of any character to repossess the property or to assert any ownership thereover, and permitted the tenant to inform the grantee's successor, Pauline Roberts, that he had sold and lost the property. As mentioned, he delivered the keys to the property to the grantee's successor, Pauline Roberts, and wished her better luck with the property than he had enjoyed. He cancelled the fire insurance upon the property and retained the unearned premium. He wrote a letter on May 12, 1933, to the First National Bank, saying,

"You will therefore please close this escrow and I will investigate the transaction which has taken place

and attempt to secure from Mr. Wilson full and complete settlement on account of the misappropriation of the deed.''

■ Having learned of the delivery of the deed and having inquired of Wilson concerning the bonds, he expressed himself as satisfied with Wilson's promise of future delivery of the bonds. Subsequent to May, 1933, he paid no taxes and omitted to exercise, or seek to exercise, any act of ownership. He sued the First National Bank for damages, alleging that the deed had been delivered, thereby ratifying the deed. For a valuable consideration he executed a release, under seal, in favor of the First National Bank a year after he knew others were in possession of the property under claim of ownership. He declared to Edward Case, present record owner, that he had ''washed his hands'' of the property.

■ Where the depositary of an escrow makes an unauthorized delivery, the grantor, with knowledge of that delivery, may, by his subsequent acts, waive performance of the conditions, ratify the delivery and thus become estopped to deny the validity of the delivery. The subsequent action of a grantor may work an estoppel and constitute ratification of an unauthorized delivery: *Harris v. Geneva Mill Co.,* 209 Ala. 538, 96 So. 622; *Dixon v. Bristol Sav. Bank,* 102 Ga. 461, 31 S. E. 96, 66 Am. St. Rep. 193. The acts and omissions of the grantor determine whether there has been ratification: *Cranston v. West Coast Life Ins. Co.,* 72 Or. 116, 142 P. 762. This court, in the last named case, announced the rule as follows:

''Deliberate and continued action of the principal, with a knowledge of the facts, consistent with an intention to adopt the contract, or inconsistent with a con-

trary intention, is sufficient evidence of ratification. Oregon Ry. Co. v. Oregon R. & N. Co. 28 Fed. (C.C.) 505.''

As to the result of ratification, express or implied, this court, in *Depot R. Syndicate v. Enterprise B. Co.*, 87 Or. 560, 575, 170 P. 294, 171 P. 223, L. R. A. 1918C, 1001, has laid down the principle as follows:

"If a principal, when fully notified thereof, neglects promptly to disavow an act or contract of his agent in excess of his authority, such silence will usually be interpreted as an implied ratification, and particularly so, if the failure speedily to repudiate such conduct or agreement might impose upon the other party loss or injury: 31 Cyc. 1276; 2 C. J. 505; Curtze v. Iron Dyke Min. Co. 46 Or. 601, 606 (81 Pac. 815)."

The plaintiff's predecessor, Louis Knerr, under all the authorities, has by his acts and conduct, largely shown by his own testimony and his own declarations, completely ratified the delivery of the deed which his successor Hansen now claims is void, and is estopped from claiming that the delivery was not made. On this ground, apart from others, the suit should be dismissed.

■ The plaintiff's predecessor, Louis Knerr, having placed it within the power of his own agent to deliver his own duly executed and acknowledged warranty deed and thereby defraud innocent third parties, must, together with his nominal successor, the plaintiff, suffer the loss occasioned by the wrongful acts of his agent and cannot impose the loss on the defendants. The First National Bank of Portland and John E. Wilson were the agents of Louis Knerr and of Louis Knerr alone: *Harth v. Pollock*, 97 Or. 663, 193 P. 202; *Rohrbacher v. Wright*, 99 Or. 186, 195 P. 343; *Miles v. Hemenway*, 59 Or. 318, 111 P. 696, 117 P. 273. Where a property owner places it within the power of his agent to defraud

an innocent purchaser or encumbrancer, the law will protect the latter: *Holt v. Guaranty & Loan Co.,* 136 Or. 272, 296 P. 852; *Rohrbacher v. Wright,* supra; *Harth v. Pollock,* supra; *Thomas v. Smith-Wagoner Co.,* 114 Or. 69, 234 P. 814.

■ The facts alleged in the complaint and shown by the evidence, without dispute at the trial, are that Louis Knerr and Beatte Knerr, his wife, on April 13, 1933, subscribed and acknowledged their warranty deed in favor of L. H. Bellman as grantee. Having done so Louis Knerr took the deed so subscribed and acknowledged to the First National Bank of Portland, Oregon, and left it there with a letter of instructions, constituting the bank the agent of Louis Knerr to deliver the deed and to receive five bonds. The evidence further shows that after Louis Knerr discovered the mistake in the description in the deed he did not go to the bank or make mention of the matter to the bank, but informed John E. Wilson of the mistake and expressed himself as in accord with Wilson's suggestion that Wilson go to the bank and have the property description corrected. He thereby constituted Wilson his agent for that purpose. As a result of the actions and conduct of these two agents of Louis Knerr, the deed was taken to the real estate brokers, representing the grantee, and the delivery was completed. On the strength of this deed, mortgages and subsequent deeds were executed. Neither Bellman nor either mortgagee nor any subsequent grantee had the slightest knowledge of any irregular circumstances regarding the delivery of the deed. The same situation existed in *Harth v. Pollock,* supra, in which case the grantor in a deed left it with one Irwin upon the express condition that said Irwin would hold and keep the same until the sale was ready to be con-

summated. Irwin fraudulently inserted his own name in the deed, and on the strength thereof Pollock loaned on the security of the property and was protected in his security. The court said: "It is sufficient to say that in our judgment * * * the plaintiff constituted Irwin his agent to negotiate a sale of the property." In *Miles v. Hemenway*, supra, the court said:

"For the purpose of delivering these notes, the cashier was the agent of Hemenway and the latter must be bound by the act or failure to act on the part of his agent." See *Holt v. Guaranty & Loan Co.*, supra.

Louis Knerr put it in the power of his own agent to deliver the deed. Having done so, and the deed having been delivered, the loss, if any, must be adjusted between him and his agent. Innocent third parties must be protected. In the case of Knerr against the Bank, brought in June, 1933, the original complaint alleged that the defendant bank negligently and carelessly delivered the deed to John E. Wilson and failed to take up the bonds, and that said John E. Wilson placed the deed beyond plaintiff's reach and control. This allegation was repeated in the first amended complaint. The second amended complaint alleged that the bank undertook for this plaintiff the delivery of said deed and wrongfully delivered the deed to Wilson and by reason of the wrongful delivery of the deed the title to the real property was conveyed to L. H. Bellman.

In *Thomas v. Smith-Wagoner Co.*, supra, Mr. Justice BELT said:

"In this case it is evident that Cain misappropriated the money paid to him by the plaintiff, and the matter resolves itself into a question as to which one of two innocent persons must suffer the loss. Under the circumstances as disclosed by the facts in the instant case as found by the jury, the burden must fall on the defend-

ant, which clothed its agent with apparent authority and thus enabled him to obtain advantage of the plaintiff: Peterson et al. v. Pacific American Fisheries, 108 Wash. 63 (183 Pac. 79, 8 A. L. R. 198)."

■■ Some point is made in the complaint of the fact that this property had been registered in the Torrens System. As we understand the statute, sections 63-301 to 63-3,108, Oregon Code 1930, relating to registering title, it purports to be a simplified recording system, with a certificate of the clerk or registrar doing the duty of an abstract of title. The law does not and could not constitutionally affect substantive rights in or to real property. A deed is said to take effect only by way of contract between the parties thereto: § 63-353, Oregon Code 1930. Hence the deed in this case under this provision took effect by way of contract, with the same legal and equitable results as in ordinary cases, and no substantive right of any party to this suit is affected by the extraneous circumstance of the registration in the Torrens System. This is in accord with the intention of Louis Knerr at the time he deposited his warranty deed with the bank. He had the Torrens System certificate but did not deposit it with his deed. He intended that title should pass by delivery of the deed. He "washed his hands" of the property after he learned of the delivery and sought to hold his agent liable for damages. All of this is inconsistent with any theory that title did not pass because he retained his certificate. It was only when the record owner, Edward Case, three years later mentioned the Torrens System to Hansen that Hansen saw in this circumstance a possibility of suit and got a deed registered in his own name on the Torrens records.

Mr. Knerr accepted one satisfaction for the wrong done him by his negligent agent. The bank should have

accounted to Knerr for the five bonds. Hansen and Knerr, however, were not content to require this accounting in their case against the bank but wanted $3,000. After taking a nonsuit and waiting three years they now want the property back and give evidence that it is now worth $7,500. Equity will not permit such a result.

It is claimed by respondent that where a deed is placed in escrow it is not delivered or effective until and unless the escrow conditions are strictly performed. The deed, when delivered to the bank, was not an escrow, but was delivered by Louis Knerr to the bank as his agent to be delivered to Wilson when the bonds were deposited with the bank. In order that an instrument may operate as an escrow, not only must there be sufficient parties, a proper subject matter and a consideration, but the parties must actually contract, and the deposit of the instrument in pursuance of such contract must be absolute and beyond the control of the depositor. Otherwise the instrument so deposited can be withdrawn by the depositor. There is, however, a class of cases where no contract exists, as where an instrument is deposited with a third person to be delivered to the beneficiary named therein upon the death of the depositor: 21 C. J. 866, § 2. Knerr, when he left the deed in the bank, had a perfect right to withdraw it and by his agent John E. Wilson did withdraw the deed. Bellman, the grantee, had nothing to do with the deposit.

The decree appealed from should be reversed in its entirety and a decree entered dismissing plaintiff's suit and confirming the title of these innocent defendants. It is so ordered.

BELT, BAILEY and LUSK, JJ., concur.

Costs disallowed to either party April 25, 1939

ON OBJECTIONS TO COST BILL

BEAN, J.

Upon due consideration of all the facts and circumstances in this case, it is hereby ordered and decreed that neither party in this suit recover costs or disbursements.

BELT, BAILEY and LUSK, JJ., concur.